Charles H. CAHILL; Aniko Der Cahill,
Plaintiffs–Appellants,

v.

**LIBERTY MUTUAL INSURANCE
CO., Defendant–Appellee.**

No. 94–55943.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1996.

Decided March 25, 1996.

John T. Wise, Stegman & Wise, Los Angeles, California, for plaintiffs-appellants.

Susan T. Olson and Lisa M. Kralik, Grace, Skocypec, Cosgrove & Schirm, Los Angeles, California, for defendants-appellees.

Before BRIGHT*, SKOPIL, and WIGGINS, Circuit Judges.

BRIGHT, Senior Circuit Judge:

Charles and Aniko Cahill filed suit against Liberty Mutual Insurance Co. (Liberty), seeking to recover from Liberty the amount of an existing default judgment obtained in the Los Angeles County Superior Court against Associated Farm Management, Inc. (AFM). Upon remand from this court, the district court[1] dismissed the complaint without leave to amend, determining that the Cahills could not bring a direct action against Liberty, and that the "advertising injury" clause of the insurance policy did not cover the damages granted by the default judgment. On appeal, the Cahills argue that the district court should not have dismissed the case. We affirm on the basis that the policy does not cover the Cahills' claim.

## BACKGROUND

For the purposes of this appeal we assume the following facts: Although AFM's business primarily consisted of the management of agricultural properties owned by others, it also marketed agricultural properties as an adjunct to its primary business. In July of 1983, the Cahills bought certain agricultural property known as Valley View Farms from a third party. AFM participated in the marketing and advertising of that property. The investment prospectus AFM provided the Cahills contained numerous misrepresentations and omissions upon which the Cahills relied.

In September 1986, the Cahills filed a lawsuit in the Los Angeles County Superior Court against AFM and other related defendants based upon their purchase of Valley View Farms. AFM is insured by Liberty under an umbrella excess liability policy. Although AFM has other policies, this appeal regards only the umbrella excess liability policy.

Although AFM apparently failed to notify Liberty of the suit, the Cahills' attorney did inform Liberty of the litigation. Liberty did not participate in the suit. AFM failed to mount a defense, and the court entered a default judgment in favor of the Cahills on their claims of negligent misrepresentation, unfair competition, and negligence among others. *Cahill v. A. Duda & Sons, Inc.,* L.A.S.C. Case No. 616848.

The Cahills then brought this action against Liberty alleging breach of contract for failure to provide coverage and seeking to satisfy the default judgment from the insurance policy. The Cahills claimed that AFM's liability for the default judgment is covered by the advertising injury provision of the umbrella excess liability policy. Liberty filed a motion to dismiss the complaint under Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. The district court granted the motion and dismissed the complaint without leave to amend.

On appeal, this court vacated the district court's order and remanded in an unpublished memorandum opinion. *Cahill v. Liberty Mutual Insurance Co.,* 24 F.3d 245 (9th Cir. April 20, 1994) (No. 92–56280). We determined that the district court abused its discretion by denying leave to amend without stating the reasons for that denial, and remanded for a statement of reasons supporting denial of leave to amend. We did not reach the merits of the dismissal.

On remand, the district court reinstated its judgment of dismissal and filed a twelve-point statement of reasons. Basically, the district court determined that (1) the Cahills could not bring a direct action against Liberty and (2) the damages sought and awarded in the default judgment were not covered under the insurance policy.

## DISCUSSION

We review *de novo* the district court's dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Stone v. Travelers Corp.,* 58 F.3d 434, 436–37 (9th Cir.1995); *Franceschi v. Schwartz,* 57 F.3d 828, 830 (9th Cir.1995). All allegations of material fact are taken as

---

* The Honorable Myron H. Bright, Senior United States Circuit Judge, Eighth Circuit Court of Appeals, sitting by designation.

1. The Honorable Manuel L. Real, United States District Judge for the Central District of California.

true and construed in the light most favorable to the nonmoving party. *National Wildlife Federation v. Espy*, 45 F.3d 1337, 1340 (9th Cir.1995). A complaint should not be dismissed unless a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995).

■ In their complaint, the Cahills assert that their claims against AFM are covered under the "advertising injury" clause in Liberty's umbrella policy. The policy defines "advertising injury" as:

> personal injury (other than bodily injury) and injury to intangible property sustained by a person or organization arising out of causes of injury first published in connection with the named insured's advertising activities during the policy period as the result of libel, slander, defamation, piracy, infringement of copyrights, invasion of the right of privacy *or any negligent act, error or omission in the use of advertising or merchandising ideas.*

[C.R. 5 at 105] (emphasis added). The Cahills focus on the underlined portion of the definition, arguing that the incorrect statements and significant omissions in advertisements, upon which they relied, are covered by the policy.

California state law governs this diversity case. We thus interpret the "advertising injury" clause of the insurance policy in accordance with California law. *See Bell Lavalin Inc. v. Simcoe and Erie General Ins. Co.*, 61 F.3d 742, 745 (9th Cir.1995). In *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992), the California Supreme Court was faced with the interpretation of certain provisions of a comprehensive general liability policy. In *Bank of the West*, the court stated,

> [A] court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In so doing, the court must

interpret the language in context, with regard to its intended function in the policy. 10 Cal.Rptr.2d at 545, 833 P.2d at 552; *see also AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 274 Cal.Rptr. 820, 831–32, 799 P.2d 1253, 1264–65 (1990). Given the precise language and the context of the "advertising injury" clause in the Liberty policy, an insured could not reasonably expect that misrepresentations which induce a party to purchase property would be covered under the policy.

The pivotal language in the clause is the final phrase "or any negligent act, error or omission in the use of advertising or merchandising ideas." Contrary to the Cahills' assertion, this language does not create liability for general negligence. The policy language itself does not extend to any negligent act, error or omission in the advertisement, but rather creates liability only for a negligent act, error or omission *in the use of advertising or merchandising ideas.* The damages the Cahills are asserting do not arise from the misuse of advertising or merchandising *ideas.*

The context of the phrase further indicates that the kinds of misdeeds asserted by the Cahills are not the type that the insurance policy was intended to cover. The "advertising injury" clause lists six specific causes of injury—libel, slander, defamation, piracy, infringement of copyrights, and invasion of the right of privacy. The policy is designed to cover two types of injury which might occur in the course of advertising: First, dignitary injuries such as defamation, libel and invasion of privacy and, second, various kinds of misappropriation and passing off which might occur in the text, words, or form of an advertisement. *See Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506 (9th Cir.1994). The Cahills' claims do not fit into these categories. In this context, an insured could not reasonably have expected that the additional language "any negligent act, error or omission in the use of advertising or merchandising ideas" would expand the coverage to embrace damages arising from misleading investment advice.[2]

---

**2.** California courts have applied the doctrine of ejusdem generis to the interpretation of insurance contracts. *See Martin Marietta Corp. v. Insurance Co. of North America,* 40 Cal.App.4th

Given the precise language and the context of the advertising injury clause, an insured could not reasonably have expected that the policy would cover the damages the Cahills are seeking. We conclude that Liberty's umbrella excess liability policy does not cover the damages awarded in the *Cahill v. A. Duda & Sons, Inc.* suit.[3]

Finally, the Cahills assert that they should have been allowed to amend their complaint before the claim was dismissed. In assessing the propriety of a motion for leave to amend, we consider factors such as bad faith, undue delay, prejudice to the opposing party, and the futility of amendment. *U.S. ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1527 (9th Cir.1995). The district court stated that granting leave to amend in this case would have been futile. The Cahills are unable to state a claim that would have been covered under the "advertising injury" clause. Consequently, the district court did not abuse its discretion in refusing to allow leave to amend.

## CONCLUSION

The "advertising injury" provision of the Liberty insurance policy did not cover the damages the Cahills were seeking, and the district court correctly dismissed the complaint for failure to state a claim. According-

ly, we need not address the other grounds provided by the district court.

**AFFIRMED.**

---

1113, 47 Cal.Rptr.2d 670, 678 (1995); *Titan Corp. v. Aetna Cas. and Sur. Co.*, 22 Cal.App.4th 457, 27 Cal.Rptr.2d 476, 486 & n. 14 (1994); *Waranch v. Gulf Ins. Co.*, 218 Cal.App.3d 356, 266 Cal.Rptr. 827, 829 (1990). The doctrine of ejusdem generis provides that "where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." *Black's Law Dictionary* 517 (6th ed. 1990).

3. In determining the scope of "advertising injury", the *Bank of the West* court stated that the "advertising injury" must have a causal connection with the insured's advertising activities before there can be coverage. *Bank of the West v. Superior Court*, 10 Cal.Rptr.2d 538, 553, 833 P.2d 545, 560. In *Bank of the West*, the California Supreme Court illuminated the requisite causal connection through the use of a few examples:

'Defamation,' whether libel or slander, occurs upon publication. 'Violation of right of privacy,' in the advertising context, is virtually synonymous with unwanted publicity. 'Infringement of copyright, title or slogan' typically occurs upon unauthorized reproduction or distribution of the protected material.

*Id.* at 553, 833 P.2d at 560 (citations omitted). In all these instances, the injury emanates within the advertisement itself and requires no further conduct. The *Bank of the West* court rejected the argument that harm caused by a defective product or service is "advertising injury" simply because the product or service was incorrectly described. *Id.* at 553–54, 833 P.2d at 560–61. *See also Fireman's Fund Ins. v. National Bank for Cooperatives*, 849 F.Supp. 1347, 1360 (N.D.Cal. 1994) (stating that under *Bank of the West* advertising injury had to occur in course of insured's advertising activities); *Gitano Group, Inc. v. Kemper Group*, 26 Cal.App.4th 49, 31 Cal.Rptr.2d 271, 277 (1994) (stating that plaintiff must show a separate harm suffered from the advertising itself). We are inclined to believe there is an insufficient causal connection to constitute "advertising injury" in this instance.