182 F.3d 1096 (9th Cir. 1999)
 BIG BEAR LODGING ASSOCIATION; SLEEPY FOREST RESORTS, a California corporation; ROBERT POOL, dba Cathy's Country Cottages; MARK TWAIN HANNAH, dba Front Desk Vacation Rentals, Plaintiffs-Appellants,
v.
SNOW SUMMIT, INC., a California corporation; RICHARD KUN, an individual; FRITZ UPPENLATZ, dba Forest Shores Estates (Inn); JOYCE REED, dba Grey Squirrel Resort; GERRY TAYLOR, dba Bear Mountain Trading Co.; BRUCE VOIGHT, dba Alpine Slide at Magic Mountain; LOREN HAFFEN, dba Boulder Creek Resort, dba Holloway's Marina & RV Park, dba North Shore Landing; ROBERT MCDONALD, dba Shores Acres Lodge & Vacation Rentals; BIG BEAR LAKE RESORT ASSOCIATION; BEAR MOUNTAIN, INC., dba Bear Mountain Ski Resort, a business entity, form unknown, and DOES 1-500, Defendants-Appellees.
 No. 97-56042
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted February 1, 1999--Pasadena, California
Filed July 8, 1999
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 COUNSEL: James G. Allen, Allen & Pappas, Thousand Oaks, California, for the plaintiffs-appellants.
 Patrick M. Kelly, Wilson, Elser, Moskowitz, Edelman & Dicker, Los Angeles, California, for the defendants-appellees.
 Douglas L. Day, Crowe & Day, Santa Monica, California, for the defendants-appellees.
 Evan Eickmeyer and Timothy M. Smith, McKinley & Smith, Sacramento, California, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California Manuel L. Real, District Judge, Presiding. D.C. No. CV-97-00451-R.
 Before: Procter Hug, Jr., Chief Judge, James R. Browning and John T. Noonan, Circuit Judges.
 OPINION
 BROWNING, Circuit Judge:
 
 
 1
 Plaintiffs are lodge operators and lodging referral services in a ski resort area in Southern California. They allege antitrust violations by other lodge operators and two ski resorts in the area, allegedly injuring Plaintiffs. The district court dismissed the complaint without leave to amend. We affirm in part and reverse in part.
 
 
 2
 * Plaintiffs base their claims on the following allegations, which we accept as true for purposes of reviewing dismissal of a complaint for failure to state a valid claim. See Fed. R. Civ. P. 12(b)(6); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).
 
 
 3
 Plaintiffs provide lodging accommodations and lodging referral services in the Big Bear Valley recreational area in the San Bernardino mountains of Southern California. For years, the two ski resortsin the area, Snow Summit, Inc., and Bear Mountain, Inc., offered bulk discounts on ski lift tickets to lodges and tourist businesses, including several Plaintiffs. By virtue of these discounts, Plaintiffs were able to offer "ski packages," combinations of lodging and lift tickets, at attractive prices. Sales of such "ski packages" constituted a substantial portion of the business done by some Plaintiffs.
 
 
 4
 In about January 1994, Richard Kun, president of Snow Summit, helped form the Defendant Big Bear Lake Resort Association. Kun asked the City of Big Bear Lake to refrain from enacting a tax on Snow Summit or Bear Mountain in exchange for the Resort Association's commitment to collect funds from the lodges and ski resorts in Big Bear Valley and to use said funds to promote Big Bear Valley. He also asked the city to reduce its transient occupancy tax on local lodges from eight to six percent. The Resort Association eventually entered into an agreement with the Big Bear Chamber of Commerce, providing that the organizations would grant reciprocal memberships to each other at no cost, and that inquiries for lodging received by the Chamber of Commerce would be referred to the Resort Association.
 
 
 5
 Kun advised Plaintiff Robert Pool that Snow Summit would continue to sell discount lift tickets to Pool and Plaintiff Sleepy Forest Resorts only if Pool joined the Resort Association. Plaintiffs Pool, Sleepy Forest, Mark Twain Hannah, and members of the Big Bear Lodging Association joined the Resort Association. Because their businesses were located within the city of Big Bear Lake, Plaintiff lodges paid 2.5% of their lodging accommodation income as dues to the Association. Lodges located outside the city were charged only 0.5% of their income as dues.
 
 
 6
 Since its formation, the Resort Association has engaged in activities discriminatory to certain members, including some Plaintiffs. The Resort Association favored friends of directors of the Association by providing them with choice lodging referrals and preferential advertising, and removed advertisements purchased by Pool and Sleepy Forest from magazines the Resort Association mailed to potential customers. In the fall of 1995, Pool and Sleepy Forest quit the Resort Association because of these discriminatory practices. In October 1995, Kun advised Pool that, unless Pool and Sleepy Forest rejoined the Resort Association, neither Snow Summit nor Bear Mountain would sell them discount lift tickets nor would they honor any tickets purchased by them. Moreover, he said Snow Summit would no longer supply discount lift tickets to Sleepy Forest. Snow Summit and Bear Mountain agreed that they would refuse to sell discount lift tickets to non-members of the Resort Association. Kun advised Resort Association members that they were prohibited from selling, trading or conveying Snow Summit discount lift tickets to Pool or Sleepy Forest.
 
 
 7
 In 1996, the Resort Association adopted rules prohibiting members from belonging to other local referral services in which non-members participated, and from referring any business to non-members. In about 1996, the Resort Association suspended Doc's Getaway, which is operated by Sleepy Forest, because Sleepy Forest allegedly referred a call received by Doc's Getaway to a non-member. The Resort Association terminated Hannah's membership in November 1996 because he refused to remove a listing for the Big Bear Lake Area Chamber of Commerce, a referral service established by Hannah, from the local phone directory. The Resort Association objected to the listing because Hannah was receiving calls that might otherwise go to the Resort Association per its agreement with the Chamber of Commerce. Some Plaintiffs were threatened or denied membership in the Resort Association because of their personal relationships with Resort Association members who violated Resort Association rules.
 
 
 8
 Resort Association members also engaged in a price-fixing conspiracy, agreeingon uniform rates and charges for lodge accommodations, ski packages and resort services; publishing and disseminating advertising materials reflecting the agreedupon rates; communicating for the purpose of implementing this conspiracy; and charging and collecting the agreed-upon rates.
 
 
 9
 Plaintiffs assert the Defendants' alleged conduct violated sections 1 and 2 of the Sherman Act and California's Cartwright Act, and breached Plaintiffs' subscription agreements with the Resort Association. The district court dismissed Plaintiffs' complaint without leave to amend, stating only: "This is not an antitrust case, period." Plaintiffs filed a timely appeal.
 
 II
 
 10
 We review dismissal of a complaint without leave to amend de novo.[1] See Cahill , 80 F.3d at 337 (dismissal for failure to state a claim); Dumas v. Kipp, 90 F.3d 386, 389 (9th Cir. 1996) (dismissal without leave to amend). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill, 80 F.3d at 337-38. "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see also Cahill, 80 F.3d at 338. The allegations in the complaint, however, must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). A complaint may be dismissed without leave to amend only "when it is clear that the complaint cannot be saved by further amendment." Dumas, 90 F.3d at 389.
 
 A. Antitrust Claims
 
 11
 Sherman Act S 1 prohibits agreements that unreasonably restrain trade. See 15 U.S.C. S 1; NYNEX Corp. v. Discon, Inc., 119 S. Ct. 493, 497 (1998).[2] "[C]ertain kinds of agreements will so often prove so harmful to competition and so rarely prove justified that the antitrust laws do not require proof that an agreement of that kind is, in fact, anticompetitive in the particular circumstances. An agreement of such a kind is unlawful per se." NYNEX, 119 S. Ct. at 497 (citations omitted). Horizontal price-fixing, market division, and certain types of group boycotts are unlawful per se. See id. Other alleged violations are subject to "rule of reason " analysis to determine "whether particular concerted conduct unreasonably restrains competition." Oltz v. St. Peter's Community Hosp., 861 F.2d 1440, 1445 (9th Cir. 1988).
 
 
 12
 Rule of reason analysis "is a case-by-case study in which the fact finder weighs all of the circumstances of a case." Id. (internal quotation marks omitted). "Proving injury to competition in a rule of reason case almost uniformly requires a claimant to prove the relevant market and to show the effects upon competition within that market." Id. at 1446. Elaborate market analysis and case-by-case evaluation are unnecessary in cases involving per se antitrust violations because the anticompetitive effects of the practice are presumed. See id. at 1445.
 
 
 13
 To have standing to bring an antitrust case, a plaintiff must demonstrate that the harm the plaintiff has suffered or might suffer from the practice is an "antitrust injury," that is, an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 334 (1990) (internal quotation marks omitted). The injury must be "attributable to an anti-competitive aspect of the practice under scrutiny." Id.
 
 1. Price Fixing
 
 14
 Plaintiffs sufficiently allege a conspiracy to fix prices of lodging accommodations, lift tickets, and ski packages, a per se antitrust violation. Plaintiffs, however, have failed to allege antitrust injury resulting from all aspects of the alleged price fixing conspiracy.
 
 
 15
 Certain Plaintiffs have alleged antitrust injury resulting from the alleged price-fixing of lift tickets. Pool, Sleepy Forest, and Plaintiff Lodging Association purchase lift tickets and thus suffer injury due to the presumably inflated price[3] of those tickets.[4] The remaining Plaintiffs should be granted leave to amend to allege, if they are able to do so, that they too purchase resort services at prices fixed by Defendants or were otherwise injured by Defendants' price-fixing.
 
 
 16
 Plaintiffs have not alleged antitrust injury resulting from the price-fixing of ski packages and lodging accommodations. They are competitors to, rather than customers of, Defendants in the sale of these services. Thus, Plaintiffs stand to benefit from the fact that prices for those services are inflated. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 583 (1986) (competitors stand to gain from conspiracy to charge supra-competitive prices); 2 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law P 373b (1995). Competitors, however, may have standing to challenge practices used to enforce a price-fixing conspiracy. See id. PP 373d, 373e. Plaintiffs have alleged injuries resulting from their exclusion from the Resort Association, but have not alleged that these injuries resulted from the price-fixing conspiracy. Plaintiffs allege the Resort Association favored certain members in advertising and referrals, and that some Plaintiffs quit the Resort Association because they refused "to participate in the wrongful acts versus and discriminatory treatment of lodge owners." However, Plaintiffs attribute this favoritism to personal relations rather than participation or non-participation in an antitrust conspiracy. Plaintiffs should be granted leave to amend to allege, if they are able to do so, injury resulting from practices used to enforce the alleged price-fixing conspiracy.
 
 
 17
 We reverse the district court's dismissal of the claims of Plaintiffs Pool, Sleepy Forest and Plaintiff Lodging Association for price fixing of lift tickets in violation of Sherman Act S 1 and the Cartwright Act. We affirm the dismissal of the remaining Plaintiffs' claim for price-fixing of lift tickets and of all Plaintiffs' claims for price-fixing of lodging accommodations and ski packages, but reverse the district court's denial of leave to amend the complaint to state such claims, if Plaintiffs are able to do so.
 
 
 18
 2. Agreement by Snow Summit and Bear Mountain to Sell Discount Lift Tickets on Fixed Terms
 
 
 19
 Plaintiffs allege that the ski resorts agreed to sell discount lift tickets to lodge operators only if they joined the Resort Association. An agreement among competitors "for the purpose of coercing more favorable terms of trade from third parties than they could obtain through the normal play of competitive forces" violates antitrust law. De Jong Packing Co. v. United States Dep't of Agric., 618 F.2d 1329, 1336 (9th Cir. 1980) (meat packers' agreement to purchase cattle from stockyards only on "subject to inspection" basis was unlawful restraint of trade); see also Paramount Famous Lasky Corp. v. United States, 282 U.S. 30, 41-42 (1930) (film distributors' agreement that they will only do business with exhibitors according to the terms of a standard contract requiring arbitration violated Sherman Act). Plaintiffs allege that the condition that lodges must belong to the Resort Association is a "more favorable term of trade" for the ski resorts, because it permits the resorts to shift the costs of promoting tourism in the region from themselves (imposed through a threatened city tax) to the broader tourism business community (imposed through Resort Association dues).
 
 
 20
 Pool, Sleepy Forest and Plaintiff Lodging Association purchased lift tickets for resale and thus allege sufficient antitrust injury to challenge this agreement. As to these Plaintiffs, we reverse the district court's dismissal of the claim that the ski resorts have unlawfully conspired to sell discount lift tickets only to Resort Association members in violation of Sherman Act S 1 and the Cartwright Act. The court should grant the remaining Plaintiffs leave to amend the complaint to allege antitrust injury with respect to this claim, if they can do so.
 
 3. Group Boycott
 
 21
 Plaintiffs have alleged a (group boycott by the Resort Association[5] and its members against non-members. Resort Association rules allegedly bar members from belonging to any other referral associations, and from forwarding lodging referrals to non-members. The ski resorts also allegedly refuse to sell discount lift tickets to non-members and at least Snow Summit allegedly informed Resort Association members that they cannot resell discount lift tickets to certain non-members. Thus, the boycott restricts non-members' access to customers (by blocking referrals) and supplies (by withholding discount ski lift tickets) that may be necessary for effective competition. Cf. Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co., 472 U.S. 284, 294 (1985) (group boycotts that cut off competitors' access to essential competitive inputs are often deemed per se unlawful). Plaintiffs are all non-members of the Resort Association and thus suffer an antitrust injury as the direct targets of the boycott.[6]
 
 
 22
 We reverse the district court's dismissal of Plaintiffs' claim that Defendants participated in a group boycott in violation of Sherman Act S 1 and the Cartwright Act.
 
 
 23
 4. Dues Differential Between City and Non-City Businesses
 
 
 24
 Plaintiffs allege Defendants "joined together . . . to preclude lodge owners in the city from competing in[the ski package] market unless they paid 2.5% of their gross income" in dues to the Resort Association, which was five times the dues rate for lodge owners outside the city. This dues differential does not fit within any category of per se antitrust violation and Plaintiffs have not alleged anti-competitive effects. See infra Part II(A)(7). Absent allegations of anti-competitive effects, it is impossible to determine whether Plaintiffs have alleged an antitrust violation or antitrust injury.
 
 
 25
 We affirm the district court's dismissal of Plaintiffs' claim that the dues differential violates Sherman ActS 1 and the Cartwright Act, but reverse the district court's denial of leave to amend the complaint to allege such a claim, if Plaintiffs have a factual basis for doing so.
 
 5. Monopolization
 
 26
 Plaintiffs allege Defendants monopolized or attempted to monopolize commerce. Monopolization claims can only be evaluated with reference to properly defined geographic and product markets. See Thurman Indus., Inc. v. Pay`N Pak Stores, Inc., 875 F.2d 1369, 1373 (9th Cir. 1989). Plaintiffs do not sufficiently identify the markets affected by Defendants' alleged antitrust violations. See infra Part II(A)(7). Plaintiffs also fail to allege two essential elements of an attempted monopolization claim: (1) intent to monopolize, and (2) a dangerous probability of success of achieving monopoly power in a particular market. See Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 459 (1993). However, these deficiencies may be curable by amendment.
 
 
 27
 We affirm the district court's dismissal of Plaintiffs' Sherman Act S 2 and Cartwright Act monopolization and attempted monopolization claims, but reverse the court's denial of leave to amend to state such claims, if Plaintiffs are able to do so.
 
 6. Unfair Practices Act
 
 28
 Plaintiffs allege Defendants violated California's Unfair Practices Act, Cal. Bus. & Prof. Code SS 1700017101. This statute prohibits several specific anti-competitive practices, but "chiefly prohibits selling articles below cost, or giving them away, for the purpose of injuring competitors and destroying competition." 5 B.E. Witkin, Summary of California Law S 591 (9th ed. 1987). Plaintiffs do not allege that Defendants sold products or services below cost. The statute bars price discrimination in sales to different geographic locations, see Cal. Bus. & Prof. Code SS 17031, 17040, which might seem to apply to the difference in Resort Association dues charged to lodge operators in and outside the city. Such discrimination is unlawful, however, only if accompanied by anti-competitive intent. See id. S 17040. Plaintiffs have failed to allege facts that would support an inference that the Resort Association acted with anti-competitive intent when it adopted its two-tiered dues structure. None of the other specific prohibitions in the Unfair Practices Act are clearly implicated in the complaint. We cannot say, however, that Plaintiffs can allege no set of facts that might entitle them to relief under this statute. We affirm the district court's dismissal of Plaintiffs' Unfair Practices Act claim, but reverse the denial of leave to amend.
 
 
 29
 7. Anti-competitive Effects: Market Definition
 
 
 30
 Except when alleging a per se antitrust violation, Plaintiffs must identify the relevant geographic and product markets in which Plaintiffs and Defendants compete and allege facts demonstrating that Defendants' conduct has an anti-competitiveeffect on those markets. See supra Part II(A)(4); Oltz, 861 F.2d at 1446. Market definition is also essential to establish a monopolization claim. See supra Part II(A)(5).
 
 
 31
 Plaintiffs' complaint refers to the geographic market of Big Bear Valley and to product markets for lodging accommodations and ski packages. Plaintiffs do not, however, allege that Big Bear Valley is the area of effective competition in which buyers of these products can find alternative sources of supply, or that there are no other goods or services that are reasonably interchangeable with lodging accommodations or ski packages within this geographic market. See Oltz, 861 F.2d at 1446. Nor have Plaintiffs alleged that Defendants' conduct resulted in anticompetitive effects within appropriately defined markets. Plaintiffs should be granted leave to amend their complaint to allege anticompetitive effects within a particular market, if they are able to do so.
 
 
 32
 B. State-Law Breach of Contract and Tortious Interference Claims
 
 
 33
 Plaintiffs allege Defendants breached certain Plaintiffs' subscription agreements with the Resort Association. Although Defendants did not address this claim in their briefs supporting their motion to dismiss, the district court dismissed the claim without explanation and without providing Plaintiffs an opportunity to be heard on the issue. We reverse and remand for the court to consider and decide the sufficiency of the breach of contract allegations after affording the parties an opportunity to submit argument.
 
 
 34
 In their appellate brief, Plaintiffs assert a claim for breach of the Resort Association's contract with the Chamber of Commerce and state-law claims for tortious inducement of breach of contract, intentional interference with prospective economic advantage, and negligent interference with contractual relations. None of these claims appears in the current complaint. On remand, Plaintiffs may seek leave to amend their complaint to state these additional claims, if they wish to do so. Because this litigation is still in its early stages, leave should be liberally granted unless amendment would be futile. See Fed. R. Civ. P. 15(a).
 
 III
 
 35
 Plaintiffs' complaint contained class allegations, and allegations that the ski resorts violated the terms of their Special Use Permits issued by the United States Forest Service. Defendants moved to strike these allegations as immaterial. The district court granted the motion without explanation.
 
 
 36
 Although Plaintiffs appealed this order, their appellate brief does not address it. Issues appealed but not briefed are deemed abandoned. Pierce v. Multnomah County, 76 F.3d 1032, 1037 n.3 (9th Cir. 1996). Plaintiffs mention that they brought a breach of contract claim based the ski resorts' alleged violation of the Special Use Permits, but offer no supporting argument or citations to authority. " `Issues raised in a brief which are not supported by argument are deemed abandoned.' " Acosta-Huerta v. Estelle, 7 F.3d 139, 144 (9th Cir. 1993) (quoting Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988)).
 
 IV
 
 37
 Plaintiffs moved for reconsideration or clarification of the order of dismissal. The court denied the motion as frivolous and ordered Plaintiffs to pay a total of $4,000 in attorneys' fees and costs to Defendants. Plaintiffs timely appealed.
 
 
 38
 Plaintiffs' motion was a reasonable attempt to clarify whether the district court had ruled on Plaintiffs' state law claims, and, if so, whether they were dismissed on the merits or for lack of jurisdiction. It was reasonable for Plaintiffs to seek clarification to ensure that the court had considered all of Plaintiffs' claims when ruling on Defendants' motion to dismiss and had not neglected or overlooked their state claims. Such a motion wasappropriate under Rule 60(a) of the Federal Rules of Civil Procedure[7] or Local Rule 7.16(c).[8]
 
 
 39
 Plaintiffs' request to be relieved of the res judicata effects of the court's ruling also was reasonable. The district court had federal question jurisdiction over Plaintiffs' federal claims and supplemental jurisdiction over their state claims. After the court concluded that Plaintiffs had failed to state valid federal antitrust claims, it was free to decide in its discretion whether to continue to exercise supplemental jurisdiction over Plaintiffs' state claims or to dismiss those claims for lack of subject matter jurisdiction. See 28 U.S.C. S 1367(c)(3). If the court dismissed the state claims for lack of jurisdiction, those claims would not be res judicata and Plaintiffs could pursue them in state court. Because the district court did not explain the basis for its rulings, it was appropriate for Plaintiffs to seek clarification, and to specifically request that the court dismiss the state claims without prejudice.[9]
 
 
 40
 In light of our holding that the district court erred in its initial order dismissing Plaintiffs' complaint without leave to amend, we need not review the court's ruling on the merits of Plaintiffs' motion for reconsideration or clarification. It was an abuse of discretion, however, to impose sanctions on Plaintiffs for filing the motion. Local Rule 7.19 authorizes the court to sanction parties who file frivolous motions and Local Rule 27 authorizes an award of costs and attorneys' fees to opposing counsel "if the Court finds that the conduct rises to the level of bad faith and/or a willful disobedience of a court order." C.D. Cal. L. Civ. R. 27(b); see also Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991). For the reasons stated, Plaintiffs' motion was not frivolous. The district court also made no finding of bad faith or vexatious conduct, and the record would not support such a finding.
 
 
 41
 We reverse the district court's order imposing sanctions on Plaintiffs for filing the motion for reconsideration or clarification.
 
 V
 
 42
 Defendants have noted serious deficiencies in Plaintiffs' briefs.[10] While we do not condone these deficiencies, we decline to impose the sanctions requested by Defendants. Because Plaintiffs failedto identify standards of review, Defendants urge us to adopt Defendants' statements of the standards of review, regardless of whether they are legally correct. This sanction would never be appropriate. They also urge dismissal of Plaintiffs' appeal. This court has imposed the ultimate sanction of dismissal only in egregious cases of noncompliance, primarily where parties failed to cite to the record. See N/S Corp. v. Liberty Mut. Ins. Co. , 127 F.3d 1145, 1146 (9th Cir. 1997); Mitchel v. General Elec. Co., 689 F.2d 877, 878-79 (9th Cir. 1982); see also Fed. R. App. P. 28-2 Ninth Circuit advisory committee's note (citing Mitchel and providing that sanctions may be imposed for failure to comply with the briefing rules, "particularly with respect to record references"). Here, Plaintiffs cited to the record extensively and their appeal is largely meritorious. We therefore decline to dismiss the appeal; we trust Plaintiffs' counsel will faithfully comply with our rules if he continues to practice before this court.
 
 CONCLUSION
 
 43
 The order dismissing Plaintiffs' complaint without leave to amend is reversed in part and affirmed in part. Plaintiffs have abandoned their appeal of the district court's order striking portions of the complaint as immaterial. The district court's order sanctioning Plaintiffs for filing their motion for reconsideration or clarification is reversed. We decline to impose sanctions for Plaintiffs' noncompliance with this court's briefing rules.
 
 
 44
 Each side shall bear its own costs.
 
 
 45
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 Notes:
 
 
 [1]
 Defendants, citing Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994), argue that the district court's decision to deny leave to amend should be reviewed for abuse of discretion. The motion in Janicki involved the court's management of its own docket: the plaintiff sought to name an additional defendant eighteen months after it had filed its complaint, a year after the deadline for naming additional parties in the court's scheduling order had expired, and eighteen months after plaintiff's separate action against the proposed defendant had been dismissed by a different court. See id. In contrast, the motion to amend in this case turns on the merits: whether Plaintiffs have alleged valid causes of action. We therefore review both the motion to dismiss and the motion for leave to amend de novo.
 
 
 [2]
 California's Cartwright Act, Cal. Bus. & Prof. Code SS 16700-16770, is patterned after the Sherman Act. California courts look to federal case law interpreting the Sherman Act for guidance in interpreting the Cartwright Act. See Chicago Title Ins. Co. v. Great Western Fin. Corp., 69 Cal. 2d 305, 315 (1968).
 
 
 [3]
 Because price-fixing is a per se antitrust violation, price inflation is presumed. Courts do not evaluate the reasonableness of the price when determining whether price-fixing agreements are unlawful. See Arizona v. Maricopa County Med. Soc'y, 457 U.S. 332, 350 & n.22 (1982).
 
 
 [4]
 Defendants argue that Plaintiffs have standing to bring an antitrust action only if they compete with Defendants. This is incorrect. Consumers have standing to challenge antitrust violations that cause them injury. Indeed, purchasers are preferred antitrust plaintiffs in price-fixing cases. See 2 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law P 370 (1995).
 
 
 [5]
 Defendants argue that the Resort Association cannot be liable for antitrust violations because it is a nonprofit association. A nonprofit organization that engages in commercial activity, however, is subject to federal antitrust laws. See Dedication and Everlasting Love to Animals v. Humane Soc'y of the United States, Inc., 50 F.3d 710, 713 (9th Cir. 1995) (dictum); 1A Areeda & Hovenkamp P 261a; cf. Goldfarb v. Virginia State Bar, 421 U.S. 773, 787-88 (1975) (learned professions are subject to antitrust laws). The RA provides its members with access to discount lift tickets and lodging referrals and markets its members' services, all of which are commercial activities.
 
 
 [6]
 Plaintiff referral associations that allege a loss of membership due to the RA's policies may establish standing in their own right, cf. Thompson v. Metropolitan Multi-List, Inc., 934 F.2d 1566, 1571 (11th Cir. 1991), and otherwise may be able to establish standing to sue on behalf of their members, see 2 Areeda & Hovenkamp P 379b.
 
 
 [7]
 The Federal Rules of Civil Procedure provide that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party . .. ." Fed. R. Civ. P. 60(a) (emphasis added). The United States District Court for the Central District of California has no local rules recognizing or governing motions for modification or clarification.
 
 
 [8]
 The United States District Court for the Central District of California permits parties to file motions for reconsideration on the grounds, inter alia, of "a manifest showing of a failure to consider material facts presented to the Court before such decision." C.D. Cal. L. Civ. R. 7.16(c).
 
 
 [9]
 At oral argument, Plaintiffs stated they would still prefer to dismiss their federal claims and have the case remanded to state court. On remand, the district court may, in its discretion, grant Plaintiffs leave to amend their complaint to eliminate their federal claims, decline to exercise supplemental jurisdiction over the remaining state law claims, and remand the case to state court.
 
 
 [10]
 Although it contains a section entitled, "Appellate Court Jurisdiction," Plaintiffs' brief does not identify the source of the court's jurisdiction in this section, as required by Fed. R. App. P. 28(a)(4) and 9th Cir. R. 28-2.2. The brief also fails to identify the standard of review for any of the issues raised on appeal, as required by Fed. R. App. P. 28(a)(9)(B) and 9th Cir. R. 28-2.5. Finally, the brief does not contain a statement of issues, as required by Fed. R. App. P. 28(a)(5). Plaintiffs' failure to comply with the briefing rules is all the more unjustified because we had already rejected Plaintiffs' initial brief as deficient: it did not include a certificate of compliance, Fed. R. App. P. 32(a)(7)(c); 9th Cir. R. 32-1, a statement of related cases, 9th Cir. R. 28-2.6, or excerpts of record, 9th Cir. R. 30-1.