**UMG RECORDINGS, INC.**
**et al., Plaintiffs,**

v.

**BERTELSMANN AG et al., Defendants.**

**Lieber et al., Plaintiffs,**

v.

**Bertelsmann AG et al., Defendants.**

**Capitol Records, Inc. et al., Plaintiffs,**

v.

**Bertelsmann AG et al., Defendants.**

**UMG Recordings, Inc. et al., Plaintiffs,**

v.

**Hummer Winblad Venture Partners**
**et al., Defendants.**

**Bridgeport Music, Inc. et al., Plaintiff**
**Applicants in Intervention.**

Nos. C 04–1351 MHP, C 04–1671 MHP, C 04–2121 MHP, C 04–1166 MHP.

United States District Court,
N.D. California.

July 14, 2004.

Andrew H. Bart, Benjamin K. Semel, Pryor, Cashman, Sherman & Flynn LLP, Theodore Kevin Cheng, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York City, Kelly M. Klaus, Glenn D. Pomerantz, Munger, Tolles & Olson LLP, Los Angeles, CA, for plaintiffs.

R. Bruce Rich, Samantha G. Fisherman, Weil, Gotshal & Manges LLP, New York City, for defendants.

PATEL, Chief Judge.

These actions arise from the litigation involving alleged copyright infringement by Napster, Inc. ("Napster") before this court and the Ninth Circuit in 2000 and 2001. Plaintiffs UMG Recordings, Inc. et al. ("UMG"), Capitol Records, Inc. et al. ("Capitol"), and Jerry Lieber et al. ("Lieber") have brought suit against Bertelsmann AG et al. ("Bertelsmann") and Hummer Winblad Venture Partners et al. ("Hummer"),[1] alleging that Bertelsmann and Hummer engaged in vicarious and contributory copyright infringement in the course of their involvement with Napster. Now before the court are defendants' motions to dismiss for failure to state a claim upon which relief may be granted, and applicant Bridgeport Music, Inc.'s ("Bridgeport's") motion to intervene. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court now enters the following memorandum and order.

*BACKGROUND* [2]

The facts and events surrounding the operation of Napster and giving rise to this action

---

1. Hummer Winblad has been sued only by UMG, while all three plaintiffs have filed suit against Bertelsmann.

2. All facts have been gleaned from the parties' moving papers, unless otherwise noted. For the purposes of this motion to dismiss, all material allegations in the parties' complaints are to be

have already been ably summarized both by this court and the Ninth Circuit. *See A & M Records, Inc. v. Napster, Inc.*, 114 F.Supp.2d 896 (N.D.Ca.2000) (Patel, C.J.) (*aff'd in part, rev'd in part, and remanded*, 239 F.3d 1004 (9th Cir.2001)) (hereinafter "*Napster II*"). In its April 2001 opinion evaluating plaintiffs' motion for a preliminary injunction, the Ninth Circuit held that plaintiffs in that case had demonstrated a substantial likelihood of success on the merits of their claim that Napster—through its file-sharing system that facilitated the exchange of copyrighted works among online users—had engaged in contributory and vicarious infringement. *See Napster II*, 239 F.3d at 1022 & 1024. Napster, Inc. has since entered bankruptcy protection, and plaintiffs in this case have now filed suit against Bertelsmann and Hummer Winblad in an effort to hold those parties responsible for Napster's actions (indeed, for the very existence of Napster) and to recoup some of their damages allegedly occasioned by the formidable amount of file-sharing that took place under Napster's auspices.

The above-captioned lawsuits naming Bertelsmann as a defendant were originally filed in the Southern District of New York, and UMG brought its lawsuit against Hummer Winblad in the Central District of California in the first instance. These cases were then transferred to this court by the Judicial Panel on Multidistrict Litigation by reason of this court's involvement in the underlying Napster litigation. Defendants have filed motions to dismiss under Fed.R.Civ.P. 12(b)(6) against all plaintiffs' claims, and briefing on these motions has been somewhat consolidated due to the inter-relatedness of the issues presented. The court further consolidates these separate motions and decides them here.

In 2003, Bridgeport filed a motion to intervene in UMG's action against Bertelsmann while that case was still pending in the Southern District of New York. Plaintiff UMG opposed Bridgeport's motion on the ground that intervention would prejudice UMG's rights in that action, as Bridgeport

and UMG were themselves at loggerheads over a number of issues, not least of which was the question of whether Bridgeport owned partial rights to numerous UMG works whose copyrights Bertelsmann had allegedly infringed. On December 1, 2003, the Southern District of New York denied Bridgeport's motion to intervene, *see UMG Recordings, Inc. v. Bertelsmann AG*, 2003 WL 22852745 (S.D.N.Y.2003), stating that Bridgeport would be entitled to file a separate action against Bertelsmann if it so chose. That separate action has since been filed and is now consolidated before this court. *See Bridgeport Music, Inc. v. Bertelsmann AG*, C–04–2149 MHP.[3] Meanwhile, on September 18, 2003, Bridgeport filed a motion to intervene in UMG's separate action against Hummer Winblad—which at that point still resided in the Central District of California—alleging, in similar fashion to UMG, that Hummer is liable for the vicarious and contributory acts of infringement perpetrated by Napster. Bridgeport pursues that motion here, and is opposed in its efforts to intervene not only by UMG, but also by Hummer Winblad, the defendant.

## LEGAL STANDARD

### I. *Motion to Dismiss*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim—and not the claim's substantive merits—"a court may [typically] look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002). If "a district court considers evidence outside the pleadings" when deciding a Rule 12(b)(6) motion, the court "must normally convert the 12(b)(6) motion into a [Federal Rule of Civil Procedure] 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir.2003).

---

taken as true and construed in the light most favorable to the plaintiff. *NL Industries. Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

**3.** No motions related to this action are currently pending before this court.

Under Rule 12(b)(6), "unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief," a motion to dismiss must be denied. *Lewis v. Telephone Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996) (citation omitted); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (permitting dismissal for failure to state a claim only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). When assessing a Rule 12(b)(6) motion, the court must accept as true "all material allegations of the complaint," and all reasonable inferences must be drawn in favor of the non-moving party. *See, e.g., Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir. 1996) (citation omitted). Dismissal is proper under Rule 12(b)(6) "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro,* 250 F.3d at 732 (citing *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988)). The court need not, however, accept as true conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001).

## II. *Vicarious and Contributory Infringement*

■ Although the Copyright Act, 17 U.S.C. §§ 101 *et seq.,* does not expressly impose liability on anyone other than direct infringers, courts have long recognized that in certain circumstances, vicarious or contributory liability will be imposed. *See, e.g., Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 261 (9th Cir.1996). Contributory infringement imposes liability where one person knowingly contributes to the infringing conduct of another. *Id.* at 264. Liability under this theory requires substantial participation in a specific act of direct infringement. *See Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971). Thus, a prima facie case of contributory infringement is presented where plaintiffs allege (1) direct infringement by a third party; (2) knowledge by the defen-

dant that third parties were directly infringing; and (3) substantial participation by the defendant in the infringing activities. *See Napster II,* 239 F.3d at 1013 n. 2, 1019. Courts do not require actual knowledge; rather, a defendant incurs contributory copyright liability if he has reason to know of the third party's direct infringement. *See Cable/Home Communication Corp., v. Network Productions, Inc.,* 902 F.2d 829, 846 (11th Cir.1990); *Sega Enter. Ltd. v. MAPHIA,* 948 F.Supp. 923, 933 (N.D.Ca.1996) (Wilken, J.).

■ Even in the absence of an employment relationship, a defendant incurs liability for vicarious copyright infringement if he "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Fonovisa,* 76 F.3d at 262 (quoting *Gershwin,* 443 F.2d at 1162).

## III. *Intervention*

Federal Rule of Civil Procedure Rule 24 has long been "liberal[ly] constru[ed] in favor of applicants for intervention." *Arakaki v. Cayetano,* 324 F.3d 1078, 1082–83 (9th Cir. 2003) (citing *Donnelly v. Glickman,* 159 F.3d 405, 409 (9th Cir.1998)); *see also Haworth, Inc. v. Steelcase, Inc.,* 12 F.3d 1090, 1094 (Fed.Cir.1993). Under Rule 24(a), a party retains *the right* to intervene if: (1) the applicant has made a timely motion to intervene; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant is situated such that the disposition of the action may impair or impede the applicant's ability to protect that interest; *and* (4) the applicant's interest is not adequately represented by existing parties. *See* Fed.R.Civ.P. 24(a)(2); *Arakaki,* 324 F.3d at 1082–83; *see also Haworth, Inc. v. Steelcase, Inc.,* 12 F.3d 1090, 1094 (Fed. Cir.1993) (noting, generally, that procedural matters like intervention are governed by the law of the circuit of residence). Rule 24(a)'s test is conjunctive; to merit intervention as of right, a prospective intervenor must satisfy each Rule 24(a) requirement. *See League of United Latin Am. Citizens v. Wilson,* 131 F.3d 1297, 1302 (9th Cir.1997).

Unlike Rule 24(a), Rule 24(b) does not require the potential intervenor to demonstrate a "significant protectable interest." *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1107–08 (9th Cir.2002). There is no requirement under Rule 24(b) that "the intervenor [ ] have a direct personal or pecuniary interest in the subject of the litigation," *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940), nor does the rule mandate that the potential intervenor "be a person [or entity] who would have been a proper party at the beginning of the suit." *Kootenai*, 313 F.3d at 1107 (citing 7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1911, 357–63 (2d ed.1986)). Instead, permissive intervention requires only that (1) an independent ground for jurisdiction exist, (2) that the motion to intervene be timely, and (3) that there exist a claim or defense shared between the main and the intervenor's suit. *See, e.g., id.* ("[A]ll that is necessary for permissive intervention [under Rule 24(b)] is that intervenor's 'claim or defense and the main action have a question of law or fact in common.'") (quoting Fed.R.Civ.P. 24(b)); *United States v. Washington*, 86 F.3d 1499, 1506–07 (9th Cir.1996) (following a tripartite test). Even if these three requirements are met, the court still retains "broad discretion" to deny a motion for permissive intervention. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir.1998). In particular, "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P 24(b).

*DISCUSSION*

I. *Defendants' Motions to Dismiss*

Defendants' motions to dismiss are premised on the theory that plaintiffs have accused them only of what might be considered "aiding and abetting" Napster's copyright violations, viz., providing Napster with additional funding that allowed it to continue operating. *See, e.g.*, Def. Bertelsmann Mot., at 1. According to· defendants, plaintiffs thus state claims for what this court has termed "tertiary infringement"—vicarious or contributory assistance to a vicarious or contributory infringer, here Napster—and towards which this court has previously expressed disfavor. *See Katz v. Napster*, C 00–4725 MHP, Mem. & Order (N.D.C.A.2001) (Patel, C.J.).

Defendants have not properly characterized plaintiffs' complaints. Rather than alleging that defendants merely supplied Napster with necessary funding (serving as a "but for" cause of Napster's subsequent activities)—or accusing defendants of contributory and vicarious infringement in purely conclusory fashion—plaintiffs have specifically accused defendants of assuming control over Napster's operations and directing the infringing activities that gave rise to the original Napster litigation. Plaintiff Lieber's complaint is exemplary:

41. As Napster's only available source of funding, Bertelsmann held significant power and control over Napster's operations. But Bertelsmann chose not to exercise its position to stop the rampant infringement by requiring that Napster immediately discontinue its infringing service until such time as it could operate lawfully. Rather, pursuing its strategy to build a digital media empire around the Napster brand, Bertelsmann convened a secret "task force" of company executives to consider how best to protect Bertelsmann's investment in the Napster service. After deliberating whether to shut the Napster service until it could be operated in a noninfringing manner, Bertelsmann's "task force" determined that, in order to realize Bertelsmann's objective to make Napster its internet distribution network, it was necessary to keep the *infringing* Napster service in operation to preserve the Napster customer base.

42. Senior Bertelsmann management endorsed the decision of its "task force" to keep the infringing Napster service operating, and directed Napster to proceed accordingly.

Lieber Compl. ¶¶ 41–42 (emphasis in original). UMG's complaint contains similar statements:

25. ... By at least October 2000, the Napster system was firmly under the control of Bertelsmann. Bertelsmann contin-

ued to operate the Napster system and to allow its users to copy millions of protected recordings, despite the District Court's finding that this activity was unlawful.

26. In February 2001, the Ninth Circuit affirmed the District Court's ruling that plaintiffs were entitled to a preliminary injunction and remanded the case for certain modifications to the injunction's terms. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir.2001). Bertelsmann nevertheless chose to keep its Napster system open for business.

27. On March 5, 2001, the District Court in the Napster Litigation modified the preliminary injunction in accordance with the Ninth Circuit's instructions. Bertelsmann still kept Napster online, and the users of the Napster system continued to copy Plaintiff's protected works unlawfully.

UMG Compl ¶ 25–27. Capitol Records's complaint alleges essentially identical facts:

At least as early as September 2000, Bertelsmann began preparing to operate the Napster system, and by at least as early as October 2000, the Napster system was firmly under the control of Bertelsmann. Bertelsmann continued to operate the Napster system and to allow its users to copy millions of protected recordings, despite the District Court's finding that this activity was unlawful. Bertelsmann could have stopped the ongoing infringement, including by shutting Napster down, withholding money from the unlawful business activities, and/or requiring Napster to exercise its power to block the accounts of users engaged in piracy, but Bertelsmann intentionally did none of these things.

Capitol Records Compl. ¶ 37.

UMG's complaint against Hummer Winblad, while not a replica of the complaints against Bertelsmann, rests upon functionally similar claims:

34. On July 26, 2000, the District Court in the Napster Litigation granted the plaintiffs' motion for a preliminary injunction. *A & M Records, Inc. v. Napster, Inc.*, 114 F.Supp.2d 896 (N.D.Ca.2000). The United States Court of Appeals for the Ninth Circuit stayed the preliminary injunction pending appeal. Napster, *by now firmly*

*under the control of the Defendants*, continued to operate and to allow its users to copy millions of protected recordings despite the District Court's finding that this activity was unlawful.

. . .

38. By the time it was shut down, the Napster system had aided, facilitated, and enabled billions of separate acts of infringement. The overwhelming majority of sound recordings that were available on Napster during the almost two years it was operative (*including the period of time that Hummer Winblad controlled the Napster system*) were copied and distributed in violation of the Copyright Act and other laws. Napster had full knowledge of this fact when it launched its service. Hummer Winblad had full knowledge of this fact, and all of the facts averred herein, when it made its decision to acquire and control Napster, and during its operation of Napster.

UMG Compl. against Hummer Winblad ¶¶ 34 & 38 (emphasis added).

Plaintiffs' allegations that defendants exercised essentially full operational control over Napster during periods in which Napster remained a conduit for infringing activity may be wholly unfounded; indeed, they may be mutually exclusive, as plaintiffs variously claim that both Hummer Winblad and Bertelsmann were managing the same corporate enterprise at approximately the same time. Regardless, such questions must be left for resolution upon motions for summary judgment or at trial, as this court is obligated—in the context of a Rule 12(b)(6) motion to dismiss—to accept the facts and allegations plead in plaintiffs' complaints as true. *Cahill*, 80 F.3d at 337–38.

For the purposes of this motion, plaintiffs have thus stated a claim that Bertelsmann and Hummer Winblad—as entities exercising full control over Napster's operations—were directly responsible for the infringing activity perpetrated by Napster's online users; more than merely *knowing of* and *contributing to* the infringing activity, they are alleged to have specifically *ordered* that such activity take place. *Cf. Napster II*, 239 F.3d 1004.

Under well-established Ninth Circuit law, such allegations state a viable claim for relief under theories of both contributory and vicarious liability. *See Gershwin*, 443 F.2d at 1162 (liability for contributory infringement requires substantial participation in an act of direct infringement); *Fonovisa*, 76 F.3d at 262 (holding that a vicarious infringer is one who "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities"). By consequence, at this stage the court need not pass upon the question of whether mere financial support of a contributing and vicarious infringer such as Napster—without more direct involvement—would give rise to a claim for contributory or vicarious infringement against the party providing the funding. Plaintiffs' far more extensive allegations suffice to defeat defendants' motions to dismiss.

## II. *Bridgeport's Motion to Intervene*

Applicant Bridgeport (hereinafter "applicant") has asserted no claim to a right of intervention under Rule 24(a), relying instead upon Rule 24(b) and the argument that its own claims against Hummer will involve many of the same issues of law and fact implicated in UMG's lawsuit. For their part, plaintiff UMG and defendant Hummer, both of whom oppose applicant's attempt to intervene, do not dispute that applicant fulfills the Ninth Circuit's three requirements for intervention: an independent ground for jurisdiction, timely filing of the motion to intervene, and a claim or defense shared between the main and the intervenor's suit. *See Kootenai*, 313 F.3d at 1107. Rather, plaintiff and defendant assert that applicant's inclusion in this litigation will introduce numerous additional issues of law and fact—some of which would pit putative co-plaintiffs UMG and Bridgeport against one another—and thus prejudice the interests of the original parties to this action.

Allowing Bridgeport to intervene in UMG's suit against Hummer Winblad would undoubtedly further the interests of judicial economy in at least some respects. Bridgeport's complaint in intervention for contributory and vicarious infringement against Hummer incorporates many of the same allegations of Hummer's effective control over Napster and its operations that undergird UMG's complaint. *See, e.g.,* Bridgeport Compl. ¶ 28 ("Hummer Winblad assumed control of Napster subsequent to the commencement of the Napster Litigation, and with full knowledge that it was alleged that Napster was liable for unprecedented, massive contributory and vicarious copyright infringement."). Bridgeport's suit against Hummer will thus necessarily involve many of the same questions of law and fact raised by UMG's own claims, and wholesale consideration of these questions in one single lawsuit would save time and judicial resources. This promotion of judicial economy is "a relevant consideration in deciding a motion for permissive intervention." *Venegas v. Skaggs*, 867 F.2d 527, 531 (9th Cir.1989).

Yet inclusion of Bridgeport in UMG's litigation will also necessitate the consideration of extraneous legal and factual issues that UMG's lawsuit would not otherwise invoke. As Hummer itself notes, applicant was not a party to the original Napster litigation, and consequently that litigation cannot serve as the means by which Bridgeport provided Napster with notice that Bridgeport's copyrighted works were being shared by users of the Napster system. *See Napster II,* 239 F.3d at 1027. In order to prove its case, Bridgeport will be forced to establish this separate notice element (giving rise to Napster's "duty to disable access to the offending content") as an aside to the general thrust of UMG's case. *Id.* Bridgeport's complaint will also introduce a multitude of new recordings into the action, forcing the parties to litigate the liability and damages (if the case reaches that stage) stemming from the putative sharing of many files that bore no relation to UMG's original lawsuit. These elements mitigate the advantages in judicial economy that might otherwise be realized and threaten to delay the resolution of plaintiff's case, issues this court is duty-bound to take into account when evaluating Bridgeport's application for intervention. *See Donnelly,* 159 F.3d at 412 ("[A] district court must consider whether intervention will unduly delay the main action. . . .").

Moreover, Bridgeport's intervention in UMG's action threatens to prejudice plaintiff by forcing it to defend against collateral actions relating to ownership of the songs whose copyrights UMG claims were infringed. Bridgeport's complaint in intervention lists a plethora of UMG-owned recordings that it claims "sample" portions of compositions owned by Bridgeport. *See* Bridgeport Compl. ¶ 2 & Exh. A. Needless to say, UMG disputes Bridgeport's ownership claims. *See* Pl. Opp. to Mot., at 6. It is reasonable to expect that litigation regarding Hummer Winblad's liability for vicarious or contributory infringement of these recordings would thus be accompanied by parallel claims brought by Bridgeport against UMG, seeking to establish rights to the putative damages UMG might obtain from Hummer for infringing those recordings.[4]

 When deciding a motion to intervene, a district court must take into consideration the prejudice to the original parties that will result if the applicant in intervention is permitted to join the action. *See Donnelly,* 159 F.3d at 412. Indeed, according to one commentator, the possibility of prejudice to the original parties is in fact the "principal consideration" when deciding a motion to intervene. 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1913 (2nd ed.2003). UMG is very likely to suffer prejudice to its efforts to collect from Hummer Winblad if it is forced—within the same action—to defend itself against charges that it must in turn pay royalties or damages to Bridgeport for the "sampling" of Bridgeport's music in its songs. Such allegations would divert time and resources from the principal thrust of UMG's lawsuit and entangle the legal and factual issues involved therein within a web that is not of the original parties' making. Moreover, it is far from clear that UMG and Bridgeport's interests will always align—co-plaintiffs who find themselves in roles of adversity regarding several crucial (and potentially very financially significant) issues are unlikely to be able to propel this litigation forward in an effective matter. The court finds that UMG will incur significant prejudice if Bridgeport is allowed to intervene in its action against Hummer Winblad.

 Finally, it is worth noting that Bridgeport retains the option of bringing a separate action against Hummer Winblad (just as it has brought a separate case against Bertelsmann), or even of litigating against UMG. While hardly dispositive, Bridgeport's ability to pursue its claims through an alternative mechanism without any prejudice to its own rights is significant in the context of a motion to intervene brought by that party. *See* 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1913 (2nd ed.2003) (existence of another adequate remedy to protect applicant's rights is relevant to court's determination regarding whether to grant leave to intervene). Moreover, if Bridgeport were to bring a separate action against Hummer Winblad, that case would likely be consolidated in this court alongside the other Napster-related litigation, just as Bridgeport's litigation against Bertelsmann has already been consolidated here. The parties—and the court—will thus likely realize the same gains in efficiency and judicial economy that might have been obtained through Bridgeport's intervention without placing UMG in the uncomfortable position of litigating alongside a party whose interests might oppose its own in substantial respect. The uncommon circumstances of this case thus favor denial of Bridgeport's motion to intervene.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are DENIED. Applicant's motion to intervene is DENIED.

IT IS SO ORDERED.

---

4. The parties expend a great deal of time and energy discussing Bridgeport's behavior in several other litigations, including one instance in which it found itself adverse towards UMG. Because there exists a sufficient basis otherwise within the record to decide Bridgeport's motion to intervene, the court need not address what impact Bridgeport's prior acts might have upon the determination of prejudice that UMG would incur from Bridgeport's introduction into this action.