**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRANDON BIERI MAYFIELD, an
individual; MONA MAYFIELD,
appointed as Guardian Ad Litem
per Order; SHANE MAYFIELD;
SHARIA MAYFIELD; SAMIR
MAYFIELD, individuals, by and
through their guardian ad litem
Mona Mayfield,
          *Plaintiffs-Appellees,*

      v.

UNITED STATES OF AMERICA,
          *Defendant-Appellant.*

No. 07-35865

D.C. No.
CV-04-01427-AA

ORDER AND
OPINION

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, Chief District Judge, Presiding

Argued and Submitted
February 5, 2009—Portland, Oregon

Filed March 24, 2010

Before: Richard A. Paez and Johnnie B. Rawlinson,
Circuit Judges, and Raner C. Collins,* District Judge.

Opinion by Judge Paez

---

*The Honorable Raner C. Collins, United States District Judge for the
District of Arizona, sitting by designation.

## COUNSEL

Douglas Letter and Scott McIntosh, Civil Division, Department of Justice, Washington, D.C., for the appellant.

Elden Rosenthal, Rosenthal & Greene, P.C., Portland, Oregon, for the appellees.

## ORDER

The government's Motion to Correct Factual Misstatements in the Panel Opinion is GRANTED. The opinion filed December 10, 2009 and reported at 588 F.3d 1252, is vacated, and a new opinion is filed concurrently with this Order.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing en banc is denied. No further petitions for rehearing shall be filed.

IT IS SO ORDERED.

## OPINION

PAEZ, Circuit Judge:

In this appeal, we must decide whether Plaintiffs-Appellees Brandon Mayfield, a former suspect in the 2004 Madrid train bombings, and his family, have standing to seek declaratory relief against the United States that several provisions of the Foreign Intelligence Surveillance Act ("FISA") as amended by the PATRIOT Act are unconstitutional under the Fourth Amendment of the U.S. Constitution. Although Mayfield settled the bulk of his claims against the government, the Stipulation for Compromise Settlement and Release (the "Settlement Agreement") allowed him to pursue his Fourth Amendment claim. According to the terms of the Settlement Agreement, the only relief available to Mayfield, if he were

to prevail on his Fourth Amendment claim, is a declaratory judgment. He may not seek injunctive relief. We hold that, in light of the limited remedy available to Mayfield, he does not have standing to pursue his Fourth Amendment claim because his injuries already have been substantially redressed by the Settlement Agreement, and a declaratory judgment would not likely impact him or his family. We thus vacate the judgment of the district court.

## I.

On March 11, 2004, terrorists' bombs exploded on commuter trains in Madrid, Spain, killing 191 people and injuring another 1600 people, including three U.S. citizens.[1] Shortly after the bombings, the Spanish National Police ("SNP") recovered fingerprints from a plastic bag containing explosive detonators. The bag was found in a Renault van located near the bombing site. On March 13, 2004, the SNP submitted digital photographs of the fingerprints to Interpol Madrid, which then transmitted them to the FBI in Quantico, Virginia.

The FBI searched fingerprints in its own computer system, attempting to match the prints received from Spain. On March 15, 2004, an FBI computer produced 20 candidates whose known prints had features in common with what was identi-

---

[1]Under the terms of the parties' Settlement Agreement, the parties agreed that plaintiffs' Fourth Amendment claim would be litigated solely on the basis of the Amended Complaint for Declaratory Relief ("Amended Complaint"), the parties' Recitation of Stipulated Facts, and memoranda of law. Under the terms of the Settlement Agreement, the government was not required to file an answer to the Amended Complaint. Thus, the government neither admitted nor denied the factual allegations in the operative complaint. The government did, however, stipulate, for purposes of this litigation only, to the facts recited in the Recitation of Stipulated Facts. Accordingly, for purposes of this opinion, we rely on the undisputed facts set forth in the Recitation of Stipulated Facts and, where additional context is necessary, the factual allegations in the Amended Complaint. Our discussion of Mayfield's personal and family history is taken from the district court's opinion.

fied as Latent Finger Print #17 ("LFP #17"), one of whom was Brandon Mayfield.

Mayfield is a U.S. citizen, born in Oregon and brought up in Kansas. He lives with his wife and three children in Aloha, Oregon, a suburb of Portland. He is 43 years old, a former Army officer with an honorable discharge, and a practicing lawyer. Mayfield is also a Muslim with strong ties to the Muslim community in Portland.

On March 17, 2004, FBI Agent Green, a fingerprint specialist, concluded that Mayfield's left index fingerprint matched LFP #17. Green then submitted the fingerprints for verification to Massey, a former FBI employee who continued to contract with the FBI to perform forensic analysis of fingerprints. Massey verified that Mayfield's left index fingerprint matched LFP #17. The prints were then submitted to a senior FBI manager, Wieners, for additional verification. Wieners also verified the match.

On March 20, 2004, the FBI issued a formal report matching Mayfield's print to LFP #17. The next day, FBI surveillance agents began to watch Mayfield and follow him and members of his family when they traveled to and from the mosque, Mayfield's law office, the children's schools, and other family activities. As detailed in the Recitation of Stipulated Facts, the FBI also applied to the Foreign Intelligence Security Court ("FISC") for authorization to "collect foreign intelligence information." Pursuant to that authorization, the FBI conducted "covert physical searches of the Mayfield home," and "electronic surveillance targeting Mr. Mayfield at the Mayfield home and at Mr. Mayfield's law office."

In April 2004, the FBI sent Mayfield's fingerprints to the Spanish government. The SNP examined the prints and the FBI's report, and concluded that there were too many unexplained dissimilarities between Mayfield's prints and LFP #17 to verify the match. When FBI agents then met with their

Spanish counterparts in Madrid, the Spanish investigators refused to validate the FBI's conclusion that there was a match.

After the meeting with the SNP, the FBI submitted an affidavit to the district court, stating that experts considered LFP #17 a "100% positive identification" of Mayfield. The affidavit also included information about Mayfield's religious practice and association with other Muslims. On May 4, 2004, the government named Brandon Mayfield as a material witness and filed an application for material witness order. The district court appointed an independent fingerprint expert, Kenneth Moses, to analyze the prints in question. Mayfield and his defense attorneys approved the appointment. Moses concluded that LFP #17 was from Mayfield's left index finger.

The district court issued several search warrants, which resulted in the search of Mayfield's home and office, and the seizure of his computer and paper files. On May 6, 2004, Mayfield was arrested and imprisoned for two weeks. Mayfield alleged that his family was not told where he was being held, but was told that his fingerprints matched those of the Madrid train bomber, and that he was the prime suspect in a crime punishable by death. While Mayfield was detained, national and international headlines declared him to be linked to the Madrid bombings. On May 20, 2004, news reports revealed that Spain had matched LFP #17 with a man named Ouhane Daoud, an Algerian citizen. Mayfield was released from prison the following day.

On October 4, 2004, Mayfield, his wife, and his children[2] filed suit against the government in the United States District Court for the District of Oregon. The complaint alleged a *Bivens*[3]

---

[2]Because the family's claims are identical to Mayfield's, we refer to all plaintiffs collectively as "Mayfield."

[3]*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

claim for unlawful arrest and imprisonment and unlawful searches, seizures, and surveillance in violation of the Fourth Amendment; a claim under the Privacy Act, 5 U.S.C. § 552a, for leaking information from the FBI and DOJ to media sources regarding Brandon Mayfield's arrest; a claim for the return of property improperly seized; and a Fourth Amendment challenge to the constitutionality of several FISA provisions and the PATRIOT Act.

Mayfield reached a settlement with the government, and the district court approved it on November 29, 2006. The Settlement Agreement provided that the government would pay compensatory damages of $2 million to Mayfield and his family; destroy documents relating to the electronic surveillance conducted pursuant to FISA; return seized "material witness materials" to Mayfield; and apologize to Mayfield and his family. In return, Mayfield agreed to release the government of all liability or further litigation, except as to one specific claim: that 50 U.S.C. §§ 1804 (authorizing electronic surveillance under FISA) and 1823 (authorizing physical searches under FISA) violate the Fourth Amendment of the U.S. Constitution. The parties agreed that the sole relief that Mayfield could seek or that the court could award with regard to this claim would be a declaratory judgment.

On December 6, 2006, Mayfield filed an Amended Complaint for Declaratory Judgment. The Amended Complaint challenged the constitutionality of 50 U.S.C. §§ 1804 and 1823, the portions of FISA, as amended by the PATRIOT Act,[4] that allow the government to conduct physical searches, elec-

---

[4]Prior to 2001, several federal courts construed FISA to authorize searches and electronic surveillance only when the government's primary purpose was to collect foreign intelligence information. *See, e.g., In re Sealed Case*, 310 F.3d 717 (FISCR 2002) (discussing pre-2001 cases). Following the September 11, 2001 terrorist attacks, Congress enacted the PATRIOT Act, which changed the original statutory language of "the purpose" to "a significant purpose." Pub. L. No. 107-56, § 218, 115 Stat. 291 (2001) (amending 50 U.S.C. §§ 1804(a)(6)(B) and 1823(a)(6)(B)).

tronic surveillance, and wiretaps of residences and offices without requiring proof of probable cause or an assertion that the primary purpose of such activities is to gather foreign intelligence information. The complaint asserted that the statutory provisions were facially unconstitutional. Mayfield alleged that he continued to suffer injury because the government refused to identify and destroy all materials derived from the FISA searches and seizures,[5] and that he feared future uses of the materials as well as other future applications of FISA against him and his family.

Both Mayfield and the government moved for summary judgment. The government also moved to dismiss on the ground that Mayfield did not have standing to pursue the Fourth Amendment claim and therefore the court lacked jurisdiction. The court subsequently issued a decision denying the motion to dismiss and granting summary judgment to Mayfield. *See Mayfield v. United States*, 504 F. Supp. 2d 1023 (D. Or. 2007). The district court determined that it had jurisdiction because there was a live case or controversy that could be redressed with a declaratory judgment. *Id.* at 1034. As to the merits, the court held that the challenged provisions of FISA, namely 50 U.S.C. §§ 1804 and 1823, as amended by the PATRIOT Act, were unconstitutional because they violate the Fourth Amendment's requirement of probable cause, and because they authorize FISA activities as long as a "significant purpose"—rather than the "primary purpose" required pre-Patriot Act—is to gather foreign intelligence information. *Id.* at 1032, 1042-43.

---

[5]Although the settlement agreement required the government to destroy or return to Mayfield certain FISA material that it acquired or seized pursuant to the the FISA electronic surveillance and search authority targeting Mayfield, the government was not required to destroy any derivative material contained in government files. The Recitation of Stipulated Facts acknowledges that "[s]ome derivative materials . . . remain in government files at present."

The government filed a timely appeal. The government argues that the district court did not have jurisdiction to hear Mayfield's Fourth Amendment claim because a declaratory judgment will not redress Mayfield's residual injuries. In addition, the government argues that the district court erred in declaring 50 U.S.C. §§ 1803 and 1823 unconstitutional. Finally, the government argues that the district court improperly decided other issues that were outside the scope of the Amended Complaint and thus foreclosed by the Settlement Agreement.

## II.

In the Amended Complaint, Mayfield sought a declaratory judgment that 50 U.S.C. §§ 1804 and 1823, as amended by the PATRIOT Act, are facially unconstitutional. Mayfield alleged that the government used the challenged statutory provisions to conduct covert surveillance, searches of the family's private quarters, and seizures of the family's private materials. Mayfield further asserted that because the government obtained these materials unlawfully, and even though the government returned the physical materials, the continued retention of any derivative material was also unlawful. The purpose of the desired declaratory judgment was thus twofold: 1) to prevent future uses of FISA against Mayfield; and 2) to force the government to return or destroy all derivative materials in its possession obtained from Mayfield by unconstitutional means.[6]

---

[6]*See Mayfield*, 504 F. Supp. 2d at 1034 ("The government provides that derivative materials may include photocopies or photographs of documents from confidential client files in Mayfield's law office, summaries and excerpts from the computer hard drives from the Mayfield law office and plaintiffs' personal computers at home, analysis of plaintiffs' personal bank records and bank records from Mayfield's law office, analysis of client lists, websites visited, family financial activity, summaries of confidential conversations between husband and wife, parents and children, and other private activities of a family's life within their home. These materials, in a derivative form, have been distributed to various government agencies.").

**[1]** To bring suit in federal court, a plaintiff must establish three constitutional elements of standing. First, the plaintiff must have suffered an "injury in fact," the violation of a protected interest that is (a) "concrete and particularized," and (b) "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, the plaintiff must establish a causal connection between the injury and the defendant's conduct. *Id*. Third, the plaintiff must show a likelihood that the injury will be "redressed by a favorable decision." *Id*. (quoting *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 43 (1976)).

**[2]** "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 185 (2000). Thus, a plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment. *See id*. at 185-86; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

The government contends that the district court lacked jurisdiction over Mayfield's claims because Mayfield lacks the requisite Article III standing. According to the government, Mayfield's Fourth Amendment claim in the Amended Complaint is based on past injuries and speculation about the possibility of future injuries. Furthermore, as the government argues, the retention of derivative materials obtained from the FISA activities would not be affected by a declaratory judgment because there is no requirement that the government release or destroy the fruits of an unlawful search. The government thus asserts that Mayfield has not demonstrated that his injury is "imminent" or will be redressed by the relief sought. *See Defenders of Wildlife*, 504 U.S. at 560-61.

Standing is a question of law that we review de novo. *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002). We also review de novo a grant of summary judgment.

*Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999). The district court determined that Mayfield alleged an ongoing injury by the very fact of the government's retention of derivative FISA materials. *Mayfield*, 504 F. Supp. 2d at 1034. The court further concluded that a judgment declaring the challenged statutory provisions unconstitutional would likely result in the government's making reasonable efforts to destroy the derivative materials in its possession. *Id*. We agree that Mayfield suffers an actual, ongoing injury, but do not agree that a declaratory judgment would likely redress that injury. *See Johnson v. Stuart*, 702 F.2d 193, 196 (9th Cir. 1983). We therefore reverse the judgment of the district court with regard to standing. We also vacate the district court's judgment on the merits and do not address the question of whether the challenged provisions of FISA, as amended by the PATRIOT Act, are unconstitutional.

## A. Ongoing Injury

To establish Article III standing, a plaintiff must show *inter alia* that he faces imminent injury on account of the defendant's conduct. *Defenders of Wildlife*, 504 U.S. at 560. Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects. *Id*. at 564. Nor does speculation or "subjective apprehension" about future harm support standing. *Friends of the Earth*, 528 U.S. at 184; *see also Defenders of Wildlife*, 504 U.S. at 560. Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a "real or immediate threat . . . that he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111 (1983).

The government does not contest that Mayfield was subjected to surveillance, searches, and seizures authorized by FISA and the FISC. The government argues, however, that it acted under a unique set of circumstances that are highly unlikely to recur. The government further argues that any pos-

sibility that it will use the derivative materials in its possession is "wholly speculative." Mayfield responds that he continues to suffer harm as the result of the FISA activities. He argues that the retention by government agencies of materials derived from the seizures in his home and office constitutes an ongoing violation of his constitutional right to privacy.

**[3]** Although questions of standing are reviewed de novo, we will affirm a district court's ruling on standing when the court has determined that the alleged threatened injury is sufficiently likely to occur, unless that determination is clearly erroneous or incorrect as a matter of law. *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001). In *Armstrong*, we enumerated two ways in which a plaintiff can demonstrate that such injury is likely to recur. *Id.* "First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy." *Id.* "Second, the plaintiff may demonstrate that the harm is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights.' " *Id.* (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985)) (alterations in original). Here, Mayfield asserts that his injury stems from the government's application of the challenged FISA provisions, as amended by the PATRIOT Act. The causal link between the government's actions and Mayfield's injury is not disputed. Nor is the fact that the government's actions were authorized by FISA, which constitutes both the "written policy" and "pattern of officially sanctioned behavior" that gave rise to standing under *Armstrong*. Based on the undisputed facts, the district court concluded that Mayfield "continue[s] to suffer a present, on-going injury due to the government's continued retention of derivative material from the FISA seizure." *Mayfield*, 504 F. Supp. 2d at 1034. We agree with the district court's determination.

## B.  Redressability

**[4]** To establish standing, a plaintiff must also show that a favorable decision will likely redress his injury. *Defenders of*

*Wildlife*, 504 U.S. at 560; *Levine v. Vilsack*, 587 F.3d 986, 991-92 (9th Cir. 2009). When the lawsuit at issue challenges the legality of government action, and the plaintiff has been the object of the action, then it is presumed that a judgment preventing the action will redress his injury. *Defenders of Wildlife*, 504 U.S. at 561-62. Here, Mayfield seeks declaratory relief against the type of government action that indisputably caused him injury. He is thus entitled to a presumption of redressability.

**[5]** The government argues that a declaration that the challenged provisions of FISA are unconstitutional would not require the government to destroy the derivative materials in its possession, and therefore would not redress Mayfield's injury. The government is correct that it would not necessarily be required by a declaratory judgment to destroy or otherwise abandon the materials. *See, e.g., Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 362 (1998) (noting that a Fourth Amendment violation occurs at the moment of the illegal search or seizure, and that the subsequent use of the evidence obtained does not *per se* violate the Constitution); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1046 (1984) (holding that the Fourth Amendment does not provide a retroactive remedy for illegal conduct). The district court stated that a declaratory judgment would require the government to "act lawfully and make all reasonable efforts to destroy the derivative materials." *Mayfield*, 504 F. Supp. 2d at 1034. But there is nothing in the declaratory judgment that would make it unlawful for the government to continue to retain the derivative materials.[7] To establish standing, Mayfield must show a "substantial likelihood" that the relief sought would redress

---

[7]The district court stated "that 50 U.S.C. §§ 1804 and 1823, as amended by the Patriot Act, are unconstitutional because they violate the Fourth Amendment of the United States Constitution. Plaintiffs' Amended Complaint for declaratory relief is granted." *Mayfield*, 504 F. Supp. 2d at 1042-43. The court did not address the legality of the government's retention of derivative materials.

the injury. *See Johnson*, 702 F.2d at 196. There is no such likelihood here.

We recently addressed standing in *Stormans, Inc. v. Selecky*, 571 F.3d 960 (9th Cir. 2009). In *Stormans*, pharmacy owners challenged—under the Free Exercise Clause—a Washington regulation requiring pharmacists to stock and dispense Plan B (emergency contraception). In holding that the pharmacy owners met the criteria for Article III standing, we found that their injury would be redressed by a judgment that the regulation was unconstitutional. *Id*. at 971. The connection in *Stormans* was direct: the regulation required the pharmacists to perform actions that they would not have to perform if the regulation were invalidated. *Id*. If the statutes challenged by Mayfield were declared unconstitutional, there will be no direct consequence to him. The government will not be required to act in any way that will redress Mayfield's past injuries or prevent likely future injuries. Our opinion in *Stormans*, therefore, does not affect our holding here.

**[6]** We also recently addressed, in *Paulsen v. CNF Inc.*, a scenario analogous to Mayfield's. 559 F.3d 1061 (9th Cir. 2009). In *Paulsen*, plaintiffs were prescription drug plan participants who brought suit against a benefits management company under ERISA § 502(a), 29 U.S.C. § 1132, alleging breach of fiduciary duty. *Id*. at 1073. Plaintiffs argued that if the court found in their favor, the plan's drug costs, contributions, and co-payments would decrease. *Id*. We found that the alleged injury was not redressable because the court's judgment would not compel the defendants to increase their disbursement of benefits payments. *Id*. at 1074. We thus held that plaintiffs lacked standing under Article III because "any prospective benefits depend on an independent actor who retains broad and legitimate discretion the courts cannot presume either to control or predict." *Id*. (internal citations omitted). Mayfield's situation resembles that of the plaintiffs in *Paulsen*, as redressability depends upon the actions of the government in response to the court's judgment; as in *Paul-*

*sen*, such actions, in light of the unique circumstances of this case, are not within the control of the court.

## III.

**[7]** Mayfield unquestionably had standing to seek damages and injunctive relief when he filed the original complaint. The requirements for seeking such relief, however, differ from the requirements for seeking a declaratory judgment. *See Lyons*, 461 U.S. at 111. Having bargained away all other forms of relief, Mayfield is now entitled only to a declaratory judgment. Although it is undisputed that the government retains materials derived from the FISA searches and surveillance of Mayfield's property, the only relief that would redress this alleged Fourth Amendment violation is an injunction requiring the government to return or destroy such materials. Under the terms of the Settlement Agreement, Mayfield cannot seek injunctive relief.[8] Nor is it likely that the government will return the materials of its own volition, as it is under no legal obligation to do so, and has stated in its brief that it does not intend to take such action. Finally, the district court did not—in conjunction with its Opinion and Order *sua sponte* order the government to return or destroy the derivative materials, but merely stated that "it is reasonable to assume that the Executive branch of the government will act lawfully and make all reasonable efforts to destroy the derivative materials when a final declaration of the unconstitutionality of the challenged provisions is issued." *Mayfield*, 504 F. Supp. 2d at 1034.

---

[8]Paragraph 8 of the Settlement Agreement stated: "The parties agree that the sole claim that is not released as part of this settlement and that is at issue in such Amended Complaint is the plaintiffs' claim that 50 U.S.C. 1804 (relating to electronic surveillance under the Foreign Intelligence Surveillance Act) and 50 U.S.C. 1823 (relating to physical searches under such Act) violate the Fourth Amendment on their face, and the parties agree that the *sole relief* that will be awarded should the plaintiffs prevail on such claim is a declaratory judgment that one or both provisions is in violation of the Fourth Amendment . . . ." (emphasis added).

**[8]** Given the limited remedy left open by the Settlement Agreement and the absence of any authority on which the district court could rely to insist *sua sponte* that the derivative materials be returned or destroyed, we must conclude that Mayfield lacks standing to pursue his Fourth Amendment claim. We therefore vacate the judgment of the district court without reaching the merits of Mayfield's Fourth Amendment claim, and we remand to the district court with directions to dismiss Mayfield's Amended Complaint.

VACATED AND REMANDED.