The **MORNING STAR PACKING COMPANY, et al.,** Plaintiffs,

v.

**SK FOODS, L.P., et al., Defendants.**

**No. 2:09–cv–00208–MCE–EFB.**

United States District Court, E.D. California.

Nov. 17, 2010.

Dale C. Campbell, Alex James Kachmar, Jr., Weintraub Genshlea Chediak, W. Scott Cameron, Sacramento, CA, Bruce L. Simon, Pearson, Simon, Warshaw & Penny, Patrick Martin Ryan, Winston & Strawn LLP, San Francisco, CA, for Plaintiffs.

Malcolm S. Segal, Segal and Kirby, David Warren Dratman, David W. Dratman, Attorney at Law, Sacramento, CA, Christopher D. Adams, PHV, Rebekah R. Conroy, PHV, Walder Hayden & Brogan, P.A., Roseland, NJ, Stephen Ara Zovickian, Bingham McCutchen LLP, Andrew Scirica Kingsdale, Brendan P. Glackin, Eric B. Fastiff, Joseph R. Saveri, Lieff,

Cabraser, Heimann and Bernstein, LLP, Kathryn N. Richter, Schnader, Harrison, Segal & Lewis, George A. Nicoud, Gibson, Dunn & Crutcher, LLP, San Francisco, CA, Jeff S. Westerman, Milberg Weiss LLP, Los Angeles, CA, for Defendants.

## *MEMORANDUM AND ORDER*

MORRISON C. ENGLAND, JR., District Judge.

Presently before the Court is a Motion by Defendants Ingomar Packing Company, Greg Pruett, Los Gatos Tomato Products, and Stuart Woolf ("Defendants") to dismiss the claims alleged against them in the First Amended Complaint ("Complaint") of Plaintiffs The Morning Star Packing Company, Liberty Packing Company, LLC, California Fruit & Tomato Kitchens, and The Morning Star Company ("Plaintiffs") for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

### BACKGROUND [1]

Plaintiffs are in the business of processing raw tomatoes into processed tomato products. Defendants are also in the processed tomato products business, and are direct competitors of Plaintiffs. The tomato goods sold by Plaintiffs and Defendants are purchased by large corporations, such as Kraft Foods, Agusa, B & G Foods, and Safeway. Companies wishing to purchase processed tomato products utilize purchasing agents to handle transactions between the company and the processor. These agents, known as customers' purchasing agents, are typically employees of the purchasing company. In the processed tomato industry, goods are typically sold by tomato processors submitting bids to customers' purchasing agent.

In 2006, Defendants and Co–Defendant SK Foods [2], who is also in the business of processing tomatoes, formed a partnership named CTEG. The purported purpose of this venture was to promote the export of processed tomato products overseas. Plaintiffs allege that the real purpose of the partnership was for their members to agree and collude on domestic prices for the sale of their products. Plaintiffs claim that in 2005, prior to forming CTEG, Defendants and SK Foods made several anticompetitive agreements.

Defendants agreed to, among other things, fix prices for tomato paste and diced tomatoes, and to allocate customers by not competing for customers with whom other CTEG members had long-standing business relationships.[3]

In addition to price fixing and allocating customers, Plaintiffs also claim that Defendants and SK Foods made bribe payments to customers' purchasing agents. These alleged bribes were paid by Defendants and SK Foods to ensure that SK Foods' submitted bids would be the winning bids for contracts for the sale of processed tomato products. SK Foods also allegedly paid bribes to purchasing agents in exchange for information regarding bids submitted by competitors of Defendants and SK Foods, including bid information submitted by Plaintiffs. The acquired bid in-

---

**1.** The factual assertions in this section are based on the allegations in Plaintiffs' First Amended Complaint unless otherwise specified.

**2.** SK Foods is a defendant named in the Complaint, but is not a moving party to the motion presently before the Court.

**3.** For lack of a better term, Defendants' agreement not to compete for the business of customers having long-standing business relationships with other CTEG members is referred to as "allocating customers."

formation was shared with Defendants who utilized this information in preparing their own bids. As a result of these practices, Plaintiffs claim that they were unable to compete for contracts and were not awarded contracts they otherwise would have been awarded.

## STANDARD

A party may seek dismissal of a claim if the pleadings are insufficient because they fail to state a claim upon which relief may be granted.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.1996). Rule 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations omitted).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216 (3d ed.2004)) ("[T]he pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legal-

ly cognizable right of action."). If the "plaintiffs … have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

Once the court grants a motion to dismiss, they must then decide whether to grant a plaintiff leave to amend. Rule 15(a) authorizes the court to freely grant leave to amend when there is no "undue delay, bad faith, or dilatory motive on the part of the movant." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In fact, leave to amend is generally only denied when it is clear that the deficiencies of the complaint cannot possibly be cured by an amended version. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.1992); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990) ("A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal citations omitted).

## ANALYSIS

Plaintiffs contend that Defendants' conduct is unlawful under the Sherman Act, the Racketeering Influenced and Corrupt Organizations Act ("RICO"), California Common Law Unfair Competition, and California Business and Professions Code § 17000 *et seq.*[4] The issue presently before the court is whether Plaintiffs' Complaint contains sufficient factual allegations to survive a motion to dismiss pursuant to 12(b)(6). *See supra.*

### A. Sherman Act

■ Plaintiffs allege that Defendants violated the Sherman Act by engaging in

---

4. Plaintiffs' Complaint also contains a cause of action for violation of the Robinson–Patman Act, 15 U.S.C. § 13(c). This cause of action is not brought against the moving Defendants and therefore is not at issue.

price fixing, allocating customers, bribery, and bid rigging. 15 U.S.C. § 1 prohibits all agreements that unreasonably restrain trade. *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885, 127 S.Ct. 2705, 168 L.Ed.2d 623 (2007). The general method of analysis for determining whether an agreement is unreasonable, and thus a violation of the Sherman Act, is the "rule of reason" analysis. *Cal. ex rel. Brown v. Safeway, Inc.*, 615 F.3d 1171, 1178 (9th Cir.2010). Under the rule of reason analysis, the fact finder weighs all circumstances of the case to determine whether the agreement at issue was an unreasonable restraint on competition. *Leegin*, 551 U.S. at 885, 127 S.Ct. 2705.

■ To have standing to bring a cause of action under 15 U.S.C. § 1, a plaintiff must demonstrate that he or she suffered an "antitrust injury." *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1102 (9th Cir.1999). An antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.* (quoting *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990)). The injury suffered must be attributable to an anticompetitive aspect of the alleged practice. *Big Bear*, 182 F.3d at 1102.

Defendants first argue that Plaintiffs' cause of action under the Sherman Act should be dismissed because Plaintiffs do not sufficiently allege an antitrust injury as a result of Defendants alleged price fixing.

Second, Defendants assert that the Complaint fails to provide facts plausibly suggesting that Defendants participated in the alleged bribery scheme.

### 1. Antitrust Injury

■ Specifically, Defendants contend that Plaintiffs would have stood to gain from Defendants' alleged price fixing practices and, therefore, Plaintiffs did not suffer an antitrust injury. Where a plaintiff is a competitor to, rather than a customer of, a defendant alleged to have engaged in price fixing, the plaintiff will not have suffered an antitrust injury deriving from the fixing of prices. *Big Bear*, 182 F.3d at 1102. Inflated prices resulting from price fixing would not only benefit the defendant, it would also benefit the defendant's competitors. *Id.*

Here, Plaintiffs and Defendants are direct competitors. Any price fixing by Defendants would result in inflated prices for goods not only sold by Defendants, but also the processed tomato goods sold by Plaintiffs. Rather than causing harm to Plaintiffs, inflated prices for processed tomato goods would likely confer a benefit. Plaintiffs, therefore, cannot show an antitrust injury deriving solely from Defendants' alleged price fixing practices.

■ While the Court does agree with Defendants that Plaintiffs have not demonstrated an antitrust injury caused by price fixing, Plaintiffs have sufficiently plead an antitrust injury resulting from other alleged anticompetitive conduct.

Contrary to Defendants reading of the Complaint, Plaintiffs do not merely allege a conspiracy to "fix the prices of Processed Tomato Products" (Defs.' Reply In Supp. Mot. To Dismiss, p. 2) (internal quotations omitted). Plaintiffs allege that Defendants engaged in a variety of anticompetitive conduct, including bribery, bid rigging, and allocating customers.

Defendants aver that even if the Complaint sufficiently alleges that they participated in bid rigging and allocation of customers, which the Complaint clearly alleges, these allegations fail for the same reason as the price fixing allegation; the effect of these anticompetitive practices is to inflate prices paid by customers. Defendants' reasoning is flawed because it

overlooks the fact that this type of conduct, unlike price fixing, can injure both customers and competitors. For example, bid rigging not only causes customers to pay more than they would have otherwise paid in a competitive market[5], but it can also result in a competitor being outbid on a contract they would have otherwise been awarded.

In their Complaint, Plaintiffs allege that SK Foods and Defendants paid bribes to customers' purchasing agents to acquire bid information of its competitors. The Complaint claims that SK Foods shared this bid information with Defendants, who utilized the bid information in submitting bids. As a result, Plaintiffs were unable to secure contracts they would have otherwise been awarded.

These factual allegations are sufficient to show that Plaintiffs suffered an antitrust injury attributable to Defendants alleged anticompetitive conduct, and enough to sustain a 12(b)(6) motion.

### 2. Sufficiency of Bribery Allegations

■ Defendants also argue that the Complaint, while containing facts showing SK Foods paid bribes, fails to implicate Defendants as participants in the bribery scheme. Although the majority of the allegations involving bribery focus on the conduct of SK Foods, the Complaint specifically alleges that Defendants paid bribes to customers' purchasing agents to ensure that SK Foods would win bids.[6] (Complaint ¶ 98). It also alleges that Defendants, SK Foods, and other defendants named in the Complaint benefitted from

these bribes by learning information about competitors' bids, including bid information submitted by Plaintiffs. Plaintiffs further claim that the bid information obtained through bribes was used by Defendants in submitting their bids to customers. These facts are sufficient to provide Defendants with notice of the conduct Plaintiffs allege to be a violation of the Sherman Act.

Finding that Plaintiffs have plead an antitrust injury and provided adequate factual allegations of Defendants' participation in bid rigging and bribery, Defendants' Motion to Dismiss Plaintiffs' cause of action brought under the Sherman Act is denied.

### B. RICO Claims

■ RICO permits "[a]ny person injured in his business or property" by a RICO violation to bring a private right of action. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir.2008). Plaintiffs allege that Defendants violated RICO statutes 18 U.S.C. § 1962(c) and (d). Subsection (c) "prohibits a person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct of the enterprise through a pattern of racketeering activity." *Id.* at 1146. Subsection (d) prohibits conspiracy to violate subsection (c). "To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir.2008) (quoting *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir.2007)).

---

**5.** For example, an entity utilizing the bid information of its competitors can ensure that its bid is the lowest submitted, while securing maximum profit by never submitting a bid lower than necessary.

**6.** Paragraph 98 of Plaintiffs' Complaint states that "Defendants and the co-conspirators ensured that Sk Foods' bids (and possibly the

bids of Ingomar and Los Gatos) would be the winning bids by paying illegal bribes to the purchasing agents." Defendants Ingomar, Los Gatos, Pruett, and Woolf are included in the definition of "defendants" as the term is used in the Complaint. Accordingly, paragraph 98 alleges that Defendants paid bribes to purchasing agents.

■ To succeed on a civil RICO claim, a plaintiff must also show that the defendant's RICO violation proximately caused plaintiff's injury. *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir.2008) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 265–66, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)).

The Ninth Circuit has formulated non-exhaustive factors for determining whether a defendant's RICO violation was the proximate cause of a plaintiff's injury. These factors include:

"(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries."

*Sybersound*, 517 F.3d at 1148 (quoting *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168–69 (9th Cir.2002)).

■ The central question for evaluating proximate cause under a RICO claim is whether the alleged violation led directly to the harm suffered. *Anza v. Ideal Supply Corp.*, 547 U.S. 451, 461, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006). "The requirement of [a] direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *Id.* at 460, 126 S.Ct. 1991.

Here, the immediate victims of Defendants' alleged conduct are the purchasers of processed tomato products who were forced to pay higher prices, not Plaintiffs. *See id.* at 458, 126 S.Ct. 1991 (state that was defrauded and lost tax revenue was direct victim, not competitor who suffered unfair disadvantage). Currently pending before this Court are two class actions brought on behalf of direct and indirect purchasers of processed tomato products.[7] Given that the more immediate victims are pursuing their own claims, a direct causal connection is needed. *See Sybersound*, 517 F.3d at 1149.

Plaintiffs have failed to provide facts in their Complaint showing that Defendants' conduct directly led to their alleged injuries. Plaintiffs simply conclude that as a direct and proximate result of Defendants' conduct, Plaintiffs were unable to compete for contracts for the sale of tomato goods and lost sales to customers. (Complaint ¶¶ 116, 121.) The Complaint does not allege that Plaintiffs and Defendants competed for the same contracts by submitting bids to the same customer. Even if the parties did submit bids for the same contract, there are no facts indicating that Plaintiffs would have secured a contract in the absence of Defendants' alleged conduct. Plaintiffs could have failed to secure contracts for a number of reasons unconnected to Defendants' alleged RICO violation (i.e. submitting uncompetitive bids). *See Anza*, 547 U.S. at 458, 126 S.Ct. 1991, *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 403 (7th Cir.2006).

Based on the allegations contained in the Complaint, the Court cannot find any facts supporting Plaintiffs' conclusion that their injuries were the direct and proximate result of Defendants' alleged RICO violation. Defendants' Motion to Dismiss Plaintiffs' RICO claims is granted.[8]

---

**7.** *See Four in One Co., Inc. v. SK Foods, L.P.*, No. 2:08–cv–03017–MCE–EFB; *L'Ottavo Ristorante v. Ingomar Packing Co.*, No. 2:09–cv–01945–MCE–EFB.

**8.** Defendants also argue that Plaintiffs' RICO claims should be dismissed for failure to sufficiently allege Defendants violation of predicate acts. Although the Court is troubled by

## C. California Common Law Unfair Competition

■ Under California Law, "[t]he common law tort for unfair competition is generally thought to be synonymous with the act of 'passing off' one's good as those of another." *Sybersound*, 517 F.3d at 1153 (quoting *Bank of the W. v. Superior Court*, 2 Cal.4th 1254, 1263, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992)). Plaintiffs contends that California common law has since been expanded to provide protection against other unfair competitive practices. Although there has been expansion of unfair competition law in California, the expansion, rather than occurring through the common law, has primarily been in statute. *Bank of the W.*, 2 Cal.4th at 1263, 10 Cal.Rptr.2d 538, 833 P.2d 545.

Plaintiffs have not alleged that Defendants passed off their goods as those of another, which is required to bring an unfair competition claim under California common law. *Sybersound*, 517 F.3d at 1153. Accordingly, Plaintiffs have failed to allege a Common Law Unfair Competition claim. Defendants' Motion to Dismiss Plaintiffs' Common Law Unfair Competition claim is granted.

## D. California Unfair Competition Law

■ Plaintiffs' last claim seeks to enjoin Defendants from engaging in all wrongful conduct alleged in the Complaint, including commercial bribery, conspiracy to commit commercial bribery, price fixing, and other unfair and fraudulent business practices prohibited by California's Unfair Competition Law (UCL), California Business & Professions Code § 17200 *et seq.* A party injured by a violation of the UCL may only seek restitution and injunctive

relief. Cal. Bus. & Profs. Code § 17203. Defendants contend that Plaintiffs have not established that they have Article III standing to seek injunctive relief.[9]

A plaintiff bears the burden of establishing "that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 129 S.Ct. 1142, 1149, 173 L.Ed.2d 1 (2009). In order to show Article III standing for injunctive relief, a plaintiff must demonstrate the existence of an "imminent and actual" threat of injury that is "not conjectural and hypothetical." *Id.* "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. U.S.*, 599 F.3d 964, 970 (9th Cir.2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a 'real or immediate threat . . . that he will again be wronged in a similar way.'" *Mayfield*, 599 F.3d at 970 (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)).

In requesting injunctive relief, Plaintiffs claim that Defendants were the proximate cause of Plaintiffs' injuries, and that Defendants should be enjoined in the future from engaging in any acts of unfair competition. (Complaint ¶ 126.) The Complaint, however, is devoid of any facts indicating that Defendants are likely to continue utilizing unfair competition practices. Plaintiffs also fail to allege that they face a future harm similar to that which they have already allegedly suffered. Based on the facts provided in their Complaint, Plaintiffs have not satis-

---

the lack of factual allegations showing a violation of the requisite number of predicate acts, the Court need not address this issue to reach its disposition.

9. The parties do not dispute that Plaintiffs are not entitled to restitution. (Pls.' Opp'n to Defs.' Mot. to Dismiss, p. 22, n. 14.)

fied their burden of establishing standing to pursue injunctive relief. Thus, Defendants' Motion to Dismiss Plaintiffs' claim brought pursuant to California Business & Professions Code § 17200 *et seq.* is granted.

## CONCLUSION

Accordingly, Defendants' Motion to Dismiss (ECF No. 108) is hereby GRANTED with leave to amend as to Plaintiffs' Third, Fourth, and Fifth Causes of Action brought against Defendants Ingomar Packing Company, Greg Pruett, Los Gatos Tomato Products, and Stuart Woolf. Defendants' Motion to Dismiss Plaintiffs' Second Cause of Action for violation of the Sherman Act is DENIED.[10]

Plaintiffs may file an amended complaint not later than twenty (20) days after the date this Memorandum and Order is filed electronically. If no amended complaint is filed within said twenty (20)-day period, without further notice, Plaintiffs' Third, Fourth, and Fifth Causes of Action brought against Defendants Ingomar Packing Company, Greg Pruett, Los Gatos Tomato Products, and Stuart Woolf will be dismissed without leave to amend.

IT IS SO ORDERED.

---

10.  Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).