NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 18 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| SIERRA NEVADA TRANSPORTATION, INC.,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>NEVADA TRANSPORTATION AUTHORITY, Division of the Nevada Department of Business and Industry,<br><br>Defendant-Appellee. | No.   22-15823<br><br>D.C. No.<br>3:21-cv-00358-LRH-CLB<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted June 6, 2023
San Francisco, California

Before:  MILLER and KOH, Circuit Judges, and CHRISTENSEN,[**] District Judge.
Partial Concurrence and Partial Dissent by Judge KOH.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Dana L. Christensen, United States District Judge for the District of Montana, sitting by designation.

Sierra Nevada Transportation, Inc. (SNT) appeals from the district court's dismissal of its action under 42 U.S.C. § 1983 against the Nevada Transportation Authority (NTA). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We "review de novo an order granting a motion to dismiss for failure to state a claim, 'accept[ing] the complaint's well-pleaded factual allegations as true, and constru[ing] all inferences in the plaintiff's favor.'" *Bolden-Hardge v. Office of Cal. State Controller*, 63 F.4th 1215, 1220 (9th Cir. 2023) (quoting *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019)). "[Q]uestions of standing are reviewed de novo." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010).

1. SNT lacks standing to challenge the application of the NTA's licensing requirement to SNT's transportation of airline crews. SNT seeks declaratory and injunctive relief to bar the NTA from taking any future enforcement action against SNT for transporting airline crews to and from Reno-Tahoe International Airport. A party seeking prospective relief "has standing to sue where the threatened injury is real, immediate, and direct." *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Thus, to survive a motion to dismiss, SNT must plead "enough factual matter (taken as true)" to raise a plausible inference that it faces a real and immediate threat of injury going forward. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). SNT has not pleaded such facts.

The NTA has stated, both before this court and the district court, that a motor carrier's prearranged transportation of airline crews in connection with their work is exempt from the NTA's licensing requirement. Notwithstanding that authoritative statement of the agency's enforcement policy, SNT alleges that on one occasion the NTA did take enforcement action against SNT after it transported an airline crew without a state-issued certificate of public convenience and necessity. "[P]ast wrongs" such as this "do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *Lyons*, 461 U.S. at 103. Rather, we have identified "two ways in which a plaintiff can demonstrate that . . . injury is likely to recur. First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy. Second, the plaintiff may demonstrate that the harm is part of a pattern of officially sanctioned . . . behavior." *Mayfield*, 599 F.3d at 971 (second alteration in original) (internal quotations and citations omitted). SNT has made neither showing.

First, SNT has not identified a written policy under which the NTA expressly claims authority to enforce its licensing requirement against motor carriers engaged in the prearranged transportation of airline crews. The NTA did send an email in July 2019 in which it stated that any motor carrier transporting passengers between two locations in Nevada is subject to the NTA's licensing

3

requirement, even where one of those locations is the airport. But the NTA has explained that it construes that policy in accord with the District of Nevada's 2009 decision in *Brown's Crew Car of Wyoming LLC v. Nevada Transportation Authority*, No. 2:08-cv-00777, 2009 WL 1240458, at *13 (D. Nev. May 1, 2009) (holding that "rail-crew transportation services are wholly in interstate commerce").

SNT's own amended complaint shows that the NTA has, consistent with its representations to this court, interpreted its policy not to apply to the transportation of airline crews. According to the complaint, on the one occasion in 2020 that SNT was fined after transporting an airline crew, the NTA justified the fine on the ground that "the flight crew was not in uniform and thus there was no way for the NTA to know whether the passengers were actually pilots." SNT alleges that "proof was shown that the passengers were pilots." But even accepting that allegation as true, it shows, at most, that the NTA failed to honor its own exemption on one occasion. It does not raise a plausible inference that the exemption is a lie.

Nor is the NTA's airline-crew exemption "a mere litigation position." *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010). The NTA appears to have exempted airline crews from enforcement actions even at the time that it fined SNT in 2020—hence the language in the complaint alleging that NTA "assert[ed] that

4

the flight crew was not in uniform and thus there was no way for the NTA to know whether the passengers were actually pilots." That language suggests that the NTA's official policy has been, at all relevant times (including at the time the complaint was filed), to exempt the transportation of airline crews from its licensing requirements.

Second, because SNT alleges only one instance in which it was fined after transporting an airline crew, it has not shown that the harm it suffered was part of a pattern of officially sanctioned behavior. Because SNT can show neither such a pattern nor a written policy authorizing the conduct it complains of, SNT cannot show the "real and immediate threat of injury necessary to make out a case or controversy" with respect to its transportation of airline crews. *Lyons*, 461 U.S. at 103; *see also Mayfield*, 599 F.3d at 971.

2. We assume without deciding that SNT's prearranged transportation of out-of-state passengers from the Reno airport to destinations in Nevada and back constitutes interstate commerce. Even so, SNT has failed to state a claim under the Commerce Clause. "[T]he power to regulate commerce in some circumstances [is] held by the States and Congress concurrently." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2090 (2018); *see also National Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012). "[T]wo primary principles . . . mark the boundaries of a State's authority to regulate interstate commerce. First, state

5

regulations may not discriminate against interstate commerce; and second, States may not impose undue burdens on interstate commerce." *Wayfair*, 138 S. Ct. at 2090–91; *see also National Pork Producers Council v. Ross*, 6 F.4th 1021, 1026 (9th Cir. 2021), *aff'd*, 143 S. Ct. 1142 (2023).

SNT does not claim that the NTA's licensing requirement is discriminatory, and the requirement does not impose an undue burden on interstate commerce. "Where [a] statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Applying this test, we have held that the Commerce Clause generally does not preempt state licensing requirements related to public safety. *Kleenwell Biohazard Waste & General Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 392, 398 (9th Cir. 1995). The NTA's licensing requirement is "state legislation in the field of safety where the propriety of local regulation has long been recognized." *Pike*, 397 U.S. at 143 (quoting *Southern Pac. Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761, 796 (1945) (Douglas, J., dissenting)); *see* Nev. Rev. Stat. § 706.391.

SNT argues that, under the Commerce Clause, a State cannot grant one motor carrier an exclusive right to transport passengers to and from an airport. But the NTA has granted no such exclusive right; it has merely established a licensing

requirement. SNT claims that the NTA "imposes difficult, costly, and time-consuming hurdles to obtaining a certificate of public necessity and convenience." But "[t]he mere fact that a firm engaged in interstate commerce will face increased costs as a result of complying with state regulations does not, on its own, suffice to establish a substantial burden on interstate commerce." *Ross*, 6 F.4th at 1032 (quoting *Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1241–42 (9th Cir. 2021)).

3. SNT challenges the district court's refusal to grant SNT leave to amend its complaint to name the individual members of the NTA Board of Commissioners as defendants. Because amendment would be futile, the district court did not err. *See Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1046 (9th Cir. 2006).

**AFFIRMED.**

*Sierra Nevada Transportation, Inc. v. Nevada Transportation Authority*, 22-15823

KOH, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's conclusion that Sierra Nevada Transportation, Inc ("SNT") failed to plausibly allege that the Nevada Transportation Authority ("NTA") violated the Commerce Clause by applying state licensing requirements to SNT's prearranged transportation of out-of-state passengers. I respectfully dissent, though, from the majority's decision to deny SNT standing to challenge the application of those requirements to the transportation of airline crews. In my view, SNT has pleaded sufficient facts to establish standing at the motion to dismiss stage.

As described in the operative complaint, SNT is a Nevada corporation, domiciled in California. As relevant here, SNT provides transportation to and from Nevada's Reno-Tahoe International Airport ("the Airport") to three types of customers: (1) airline crews, who book through an out-of-state third party; (2) out-of-state business and vacation travelers, who book through travel agents or other third parties; and (3) customers who have directly booked SNT's services for prearranged trips. SNT is registered with the Federal Motor Carrier Safety Administration and, in California, with the California Public Utilities Commission. SNT alleges that the NTA had previously declined to "enforce its regulatory

powers against companies providing prearranged ground transportation as one leg of a continuous interstate trip."

In July 2019, the NTA's nonenforcement policy changed. The NTA set forth its new policy in an email to companies that operated transportation services from the Airport. The new policy, representing the "view of [the] agency" after "lengthy internal discussions," is unequivocal and without exception:

> ANY land transportation which begins in Nevada (even if it is at the Airport) and terminates at another location in Nevada (even if THAT is at the airport) will be considered INTRAstate transportation (Point to point within Nevada)—subject to citation and the impoundment of the vehicle used for any non-certified carrier.

The NTA further explained that it "will immediately begin enforcing the Nevada Statutes in the manner described—which is ANY point to point trips within Nevada require certification from the Nevada Transportation Authority."[1]

---

[1] Indeed, the complaint alleges that the NTA enforced this policy against SNT or similar companies on at least three occasions between July 2019 and the filing of this lawsuit in September 2021. First, as discussed below, the NTA issued a citation to SNT for transporting an airline crew from the Airport to their hotel in July 2020. Second, in July 2021, the NTA detained SNT's driver, impounded SNT's vehicle, and issued SNT a citation for transporting an NBC employee on a prearranged trip from Lake Tahoe to the Airport without a certificate of public convenience and necessity. Third, in July 2021, the NTA detained the driver of a similar transportation company, impounded the company's vehicle, and cited the company for transporting a passenger from Lake Tahoe to the Airport without a certificate of public necessity.

2

Although the majority must acknowledge the existence of this unequivocal written position, the majority still confoundingly concludes that "SNT has not identified a written policy under which the NTA expressly claims authority to enforce its licensing requirement against motor carriers engaged in the prearranged transportation of airlines crews."  The majority apparently reaches that conclusion by relying on a so-called "exemption," which is in fact the NTA's representation to this court and the district court that notwithstanding the plain and unequivocal language of the written policy, the NTA "absolutely would not knowingly take enforcement action relative to passenger transportation involving an airline crew."[2]  The majority calls this an "authoritative statement of the agency's enforcement policy" but does not support this characterization with any legal authority or record support.

Our case law makes clear that although an "enforcing authority['s] express[] interpret[ation] [of a] challenged law as not applying to the plaintiffs' activities" can show that plaintiffs lack standing, "the government's disavowal must be more than a mere litigation position."  *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010) (discussing pre-enforcement challenges); *accord EQT Prod. Co. v. Wender*,

---

[2] The NTA contends that this position stems from the District of Nevada decision in *Brown's Crew Car of Wyo. LLC v. Nev. Transp. Auth.*, No. 2:08-cv-00777, 2009 WL 1240458 (D. Nev. May 1, 2009).  However, the NTA's 2019 written policy and its 2020 enforcement decision to apply that policy to SNT's transportation of an airline crew both postdated the 2009 decision in *Brown's Crew Car*.

870 F.3d 322, 331 (4th Cir. 2017) ("The County stipulated during this litigation that it does "not intend for the Ordinance to apply" to storage at EQT's conventional wells, but again, the County's litigation position cannot override the plain text of the Ordinance when it comes to establishing a credible threat of enforcement . . . for purposes of establishing standing." (citation omitted)). Further, finding that SNT lacks standing based on the NTA's disavowal contravenes the well-established principle that standing is determined at the time of the filing of the complaint. *See, e.g.*, *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007).

When the complaint was filed, the NTA had a written policy providing that it would regulate "ANY point to point trips within Nevada." SNT has alleged that it was cited pursuant to that policy for transporting an airline crew from the Airport to their hotel in July 2020. The complaint alleges that even though "proof was shown that the passengers were pilots" at the subsequent hearing, the NTA "imposed a $1,000 fine" because "there was no way for the NTA to know whether the passengers were actually pilots." The majority's discussion of that incident shows its commitment to construing the facts in the NTA's favor, notwithstanding its recognition that the facts must be construed in the light most favorable to SNT at the motion to dismiss stage. The majority impermissibly draws inferences in favor of the NTA by casting the July 2020 citation as an indication that the NTA

4

did not intend to cite companies for transporting airline crews. Properly viewed in the light favorable to SNT, however, these facts show that the NTA not only had a written policy plainly covering transportation of airline crews; it also knowingly applied that policy to the transportation of airline crews.

Nothing in the record shows that the enforcement policy changed between July 2020 and the filing of the complaint. An "ongoing policy coupled with [the plaintiff's] past injury establishes a 'real and immediate threat' of [the plaintiff's] injury occurring again," sufficient to confer standing. *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004); *see also Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007) ("Where, as here, 'the harm alleged is directly traceable to a written policy . . . there is an implicit likelihood of its repetition in the immediate future.'" (quoting *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001))).

By reaching the merits, the majority implicitly recognizes that SNT has standing to pursue prospective relief related to other classes of out-of-state passengers even in the absence of a "pattern of officially sanctioned behavior." *See Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010). The only differences between those classes and the airline crews are the lack of any enforcement as to one of those classes (those who book directly with SNT) and the NTA's representation in this litigation that it will not enforce its policy against

5

airline crews. Thus, the majority credits the moving party's litigation position over a written policy clearly covering the challenged action, coupled with an actual history of past enforcement. Because the complaint plausibly alleges that the NTA is fining transportation companies for transporting airline crews, and the NTA acknowledges that it cannot do so under the Interstate Commerce Clause, I would remand for the district to court to grant injunctive and declaratory relief as to the transportation of airline crews.